paid and in arrears for the space of three months after the same were confirmed, or refused to pay, on demand, to the mortgagee, any sum paid by him for taxes, etc., then the whole principal sum of the loan should, at the option of the mortgagee and his assigns, be and become due and payable immediately. The complaint in this action alleged that the mortgagor had failed to pay the annual water rates on said premises for the years from 1886 to 1893, inclusive, and certain taxes thereon for the years 1893 and 1894, and that more than three months had elapsed since the same had been confirmed, and that the plaintiff elected that the whole principal sum of the mortgage should become due and payable. These facts so alleged were not denied, but the trial court found that the principal of said bond and mortgage did not become due until May 1, 1897, and dismissed the complaint. We are of the opinion that this conclusion cannot be sustained. The agreement made between the parties on May 5, 1892, did not, in terms, rescind the covenants in the mortgage relating to the payment of taxes and insurance, and there is nothing in its provisions which necessarily indicates that such was the intent of the parties. By the original terms of the mortgage, the principal sum was payable on April 26, 1889. But that provision was subject to the covenants in reference to the prompt payment of interest, taxes, and insurance, and was liable to be shortened by the mortgagor's default in their performance. It is in entire harmony with the original contract, and with the usual stipulations of this class of securities, to construe the agreement as extending the time of payment of the principal sum until May 1, 1897, subject to the performance of the covenants contained in the mortgage; and we are unwilling to hold that such important conditions in the mortgage have been abrogated, in the absence of an express agreement, or a clear implication to that effect from the terms of the written contract.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

---

(1 App. Div. 189.)

FALLKILL NAT. BANK OF POUGHKEEPSIE v. SLEIGHT et al.

(Supreme Court, Appellate Division, Second Department.   February 4, 1896.)

PRINCIPAL AND SURETY—RELEASE OF SURETY—EXTENDING TIME OF PAYMENT.
   Giving a chattel mortgage to secure an overdue note, the time of payment of which is by the terms of the mortgage extended for 30 days, such mortgage to remain after the overdue note is paid, as additional security for the payment of several demand notes already secured by a real-estate mortgage, does not postpone payment of the demand notes for any definite time, so as to discharge the sureties thereon.

Appeal from special term.

Action by the Fallkill National Bank of Poughkeepsie against Henry P. Titus and others to foreclose a mortgage. There was a judgment for plaintiff, and defendants Alexander W. Sleight and Frances S. Titus appeal from that part thereof adjudging them liable for any deficiency.   Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

L. B. Sackett, for appellants.
Herrick & Losey, for respondent.

BROWN, P. J.   This action was brought to foreclose a mortgage upon real estate given by one Henry P. Titus to the appellants to secure them as sureties upon three several promissory notes made by said Titus, and held by the plaintiff, and which mortgage was by said appellants assigned to the plaintiff.   The appellants appeal from that part of the judgment which adjudged them to be liable for such deficiency on the debt as might exist after a sale of the mortgaged premises.   The defense pleaded was that the plaintiff had, without the appellants' consent, extended the time of payment of the notes in suit for 30 days from the date of a certain chattel mortgage executed by said Henry P. Titus, and delivered to the plaintiff, and that such agreement discharged the appellants from their liability upon the notes in suit. .  The mortgage sought to be foreclosed was dated January 11, 1895, and was given to secure the payment of three notes, one of which bore date March 26, 1889, and the other two April 3, 1889, all being payable on demand, with interest.   On the date aforesaid, the plaintiff was the holder of said three notes, upon which there was then unpaid $36,600, and also of an overdue note made by said Titus for $1,800, dated July 25, 1894, and payable four months after date.   On that date, said Titus executed and delivered to the plaintiff a chattel mortgage, which, after reciting his indebtedness as aforesaid, provided as follows: "Now, for the securing payment of the said first above-mentioned note [being the $1,800 note], or any renewal or renewals thereof, and in consideration of agreement to renew the same for thirty days, and also for securing payment of said last three above-mentioned notes, after said first above-mentioned note, and any renewal or renewals thereof, shall be first paid or provided for, I do hereby sell, assign," etc.   "This mortgage is on the express condition that if the said Henry P. Titus  *  *  *  shall pay to the said Fallkill National Bank of Poughkeepsie eighteen hundred dollars, as conditioned in said first above-mentioned note, or any renewal or renewals thereof, and shall also pay the sum of thirty-six thousand six hundred dollars, as conditioned in said last three above-mentioned notes,  *  *  *  then this transfer to be void and of no effect."

The argument of the counsel for the appellants is that the intent and purpose of the agreement contained in the chattel mortgage was to postpone the payment of the three demand notes until 30 days after the date of the renewal of the $1,800 note.   This contention cannot be sustained.   The terms of the chattel mortgage fixed the order in which that security should be applied to the payment of the respective notes.   It did not purport to alter the terms of the demand notes, nor to postpone their payment until the maturity of the renewal of the $1,800 note.   The bank was left entirely free to sue upon the demand notes, or to avail itself of the security of the real-

estate mortgage for their payment, and, in fact, this action was com-
menced before the expiration of 30 days from the date of the chattel
mortgage.    Had the appellants paid the original debt to the plaintiff,
there was nothing in the terms of the chattel mortgage that would
have prevented their immediately suing their principal therefor.
The chattel mortgage was merely a new and additional collateral se-
curity for the payment of the three demand notes; and the rule is
well settled that taking a new security from the debtor without
agreeing to give him time does not discharge a surety.    Wood v.
Robinson, 22 N. Y. 564; Cary v. White, 52 N. Y. 138.    The fact that
the collateral may not be enforceable until a definite time in the
future does not operate to extend the time of payment of the principal
debt or suspend the right to sue upon the original security.    U. S.
v. Hodge, 6 How. 279.    In all cases where it has been held that the
time of payment of the original debt has been extended by the re-
ceipt of collateral security, there has been an express or implied
agreement to that effect.    Such were the cases of Place v. McIlvain,
38 N. Y. 96, and Hubbard v. Gurney, 64 N. Y. 457, cited by the appel-
lants.    In Kane v. Cortesy, 100 N. Y. 132, 2 N. E. 874, the only ques-
tion discussed was whether the testimony conclusively established an
agreement to extend the time of payment of the original debt.
There is no question in the case before us but that the time for the
payment of the $1,800 note was extended for 30 days, and that the
note was to be paid out of the proceeds of the sale of the chattels
mortgaged, before any of such proceeds could be applied to the pay-
ment of the three demand notes, but the testimony does not show
that payment of the demand notes was to be postponed for any def-
inite time, and the court's finding to that effect has ample support in
the evidence.

The judgment, so far as appealed from, must be affirmed, with
costs.    All concur.