THE NATIONAL PARK BANK OF NEW YORK, Respondent, *v.* OTTO KOEHLER, Appellant.

**Bills, notes and checks — liability of indorser — extension of time of payment by acceptance of other notes with the first note as collateral — when indorser released thereby.**

1. An accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and his assent to any change therein is essential to the continuance of his obligation. Any agreement of the creditor which operates to extend the time of payment of the original debt and suspends the right to immediate action is held to discharge the non-assenting indorser or surety, as the law will presume injury to him thereby.

2. The creditor may arrange with his debtor in any way which does not effect either of these results, but to prevent a discharge of the indorser or surety the agreement must expressly reserve all the remedies of the creditor against him; in which case the latter will be in a position to pay immediately and then to proceed against the principal debtor.

3. The maker of a note indorsed by defendant requested from the holder an extension of the time of payment and its acceptance of new notes payable in installments. The plaintiff agreed to extend the time of payment and to accept the new notes, provided the same should be indorsed by the defendant. The maker was unable at the time to procure the indorsement of the defendant upon the new notes, and in lieu thereof agreed with the plaintiff that the plaintiff should hold the old note as collateral until the new notes each should be paid; and plaintiff, in pursuance of such agreement, received the new notes and continued to hold the note indorsed by the defendant. *Held*, that since the obligation of an indorser as a surety is *strictissimi juris*, he is entitled to insist that, within the strict application of the rule in such cases, he was released from his obligation by an agreement of the creditor with the principal debtor, to which he had not consented and which extended the latter's time of payment of its indebtedness.

*Nat. Park Bank* v. *Koehler*, 137 App. Div. 785, reversed.

(Argued December 11, 1911; decided January 16, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department,

entered April 18, 1910, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, both parties having requested the direction of a verdict and the jury having been thereupon discharged. ·

The nature of the action and the facts, so far as material, are stated in the opinion.

*Oscar B. Bergstrom* for appellant.   The unconditional acceptance by the National Park Bank of new notes from the maker, the Para Recovery Company, on July 22, 1907, the date of the maturity of the note sued on, in settlement of such note, without the consent of Otto Koehler, the accommodation indorser, operated in law to extend the time of payment of the note sued on and to discharge such indorser.   The mere holding of the · note sued on as collateral until the new notes matured was not such a condition, nor was it such a reservation of the rights of the bank against the indorser as would prevent his discharge.   (*Place* v. *McIlvaine,* 38 N. Y. 96; *Dorlon* v. *Christie,* 39 Barb. 610; *Bangs* v. *Mosher,* 23 Barb. 478; *Hubbard* v. *Guerney,* 64 N. Y. 457; *Greene* v. *Bates,* 74 N. Y. 333; *Pomeroy* v. *Tanner,* 79 N. Y. 547; *Scoville* v. *London,* 50 N. Y. 686; *Bank* v. *Mackey,* 140 U. S. 220.)

*C. H. Payne* and *Louis F. Doyle* for respondent.   The rule that an extension of time given to a principal debtor, without the consent of a surety, discharges the latter, is subject to the exception that when the creditor's rights against the surety are reserved by agreement between the creditor and the principal debtor, the surety is not discharged and retains all his rights against the principal debtor.   (*Morgan* v. *Smith,* 70 N. Y. 537; *Calvo* v. *Davies,* 73 N. Y. 211; *Nat. Bank of Newburgh* v. *Bigler,* 83 N. Y. 51; *Palmer* v. *Purdy,* 83 N. Y. 144; *Hubbell* v. *Carpenter,* 5 N. Y. 171; *Stein* v. *Steindler,* 1 Misc. Rep. 414; *Brink* v. *Stratton,* 64 App. Div. 331; *Spies* v.

*N. C. Bank,* 68 App. Div. 70; *Dorlon* v. *Christie,* 39 Barb. 610.)

GRAY, J.    The plaintiff has sued the defendant as an accommodation indorser upon a note, made by the Para Recovery Company; whereby that company, four months after date, promised to pay to its own order the sum of $15,000.    This note it indorsed over to the plaintiff for value, with the defendant's indorsement added to secure its credit.    The defense interposed to the suit was that the defendant had been discharged, as indorser, through an extension of the time of payment of the note, prior to its maturity, without his consent, by the taking of new notes payable at future dates.    At the conclusion of the trial, both parties moved for the direction of a verdict; the jurors were discharged; the court took the case under advisement and, subsequently, rendered a decision in favor of the plaintiff, formulated in findings of fact and conclusions of law.    The judgment entered thereupon has been affirmed, by a divided vote of the justices.    No question has been made with respect to the procedure; the appellant stating the facts to be undisputed and asserting that, upon those facts, the trial court erroneously concluded adversely to his defense.    The facts, as found, are that, prior to the maturity of the note, the Para Company requested of the plaintiff an extension of the time of payment and its acceptance of new notes for the amount due, payable in installments of $500 a week for eight weeks and of $1,000 a week for eleven weeks. The plaintiff agreed to extend the time of payment and to accept the new notes; provided the same should be indorsed by the defendant.    It is, then, found that the maker, the Para Company, "was unable at the time to procure the indorsement of the defendant upon the new notes, * * * and in lieu thereof agreed with the plaintiff that the plaintiff should hold the old note, * * * as collateral, until the new notes, * * *

each, should be paid; and that the plaintiff, in pursuance of such agreement, received said new notes * * * and continued to hold the said note for $15,000, indorsed by the defendant." As a conclusion of law, upon which judgment was directed for the plaintiff, the court found that "by the agreement entered into * * * the rights of the plaintiff against the defendant, as indorser upon the $15,000 note, were reserved and the defendant was not discharged," etc. The agreement of the plaintiff and the Para Company, which the court has found, is evidenced in a correspondence between them and it is necessary to refer to it. Prior to the due date of the note, the Para Company wrote to the plaintiff, proposing to pay "the sum of $500 each week for eight weeks * * * the balance of $11,000 to be paid at the rate of $1,000 a week; so that in eleven weeks more the whole amount will be wiped off. For the fulfillment of this engagement, the Company will give its new note with the president's personal indorsement." The plaintiff replied, acceding to the company's request and suggesting that "Instead of making one note for the entire amount, you draw a number of notes for $500 and $1,000 each, * * * to be indorsed personally, as proposed, by Mr. Koehler," (this defendant). A week later, the company wrote, acknowledging the receipt of the plaintiff's letter and saying "there is a little mistake in your letter as you propose to have new notes indorsed by Mr. Otto Koehler. Our proposition was that our president, Mr. G. E. Heyl-Dia, would put his personal indorsement on the new notes * * * Mr. Koehler being absent for a period, which might extend over two or three months, Mr. Heyl-Dia has undertaken to take care of this matter." The plaintiff replied and gave its reasons for preferring the indorsement of Koehler; saying: "We, therefore, return the notes for the indorsement of Mr. Koehler." On the day of the maturity of the note, the company acknowledged the plaintiff's letter and said: "We do not see how it is

12

possible to get Mr. Koehler's indorsement when Mr. Koehler is out of the country and will not return for three months or so. In the meantime, we can only assure you that we will pay the notes as they fall due and we suggest that *you hold the old note with Mr. Koehler's indorsement as collateral until the new notes are paid, as a way out of the difficulty.* We have left Mr. Heyl-Dia's indorsement on the new notes, as proposed by us. The new notes, as suggested, are inclosed and we take it that this matter is now in order." The plaintiff made no reply; the old note was protested, with due notice to the defendant; a charge of the amount of the old note to the company was entered upon the books and, also, a credit entry made of the amount of the new notes, as discounted. It appears that the defendant was not in New York at the maturity of the old note; nor during the period of the running of the new notes. The eight notes for $500 and one note for $1,000 were paid, as they matured; leaving still due the plaintiff the sum of $10,000.

The existence of the general rule is not in dispute that, if there has been an agreement by the creditor with the principal debtor, which extends the time of payment of the debt, without the consent of the surety, or indorser, the latter is discharged. That there was an agreement, in this case, between the holder and the maker of the note is established and what the parties intended thereby is to be ascertained by interpreting the proposition of the final letter in the light of what had preceded and of what was done thereafter. Having retained the new notes, which were inclosed in that letter, and having credited their amount to the Para Company, the plaintiff must be deemed to have assented to the proposition, accompanying their delivery, and to be bound by its legal effect as an agreement. The appellant contends that it operated in law as an agreement to extend the time of payment of the original note and, therefore, to discharge him, as a non-assenting indorser. The respondent con-

tends that the arrangement was meant, and was understood to mean, the reservation of the creditor's rights against the indorser and the retention of the rights of the latter against the principal debtor. It is claimed, in its behalf, that the agreement was conditional upon the assent of the indorser. Our Negotiable Instruments Law, (Section 201), formulates the existing rule of law, as follows: "A person secondarily liable on the instrument is discharged; * * * (6) by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless the right of recourse against such party is expressly reserved."

The question before us is vexed, not because of instability in the rule of law established for the protection of an indorser, or surety, but in the application of the rule to the facts of the case. It is a rule, long recognized, that an accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and that his assent to any change therein is essential to the continuance of his obligation. The reason of the rule is that his right must not be affected, upon the maturity of the indebtedness, to make payment and, by subrogation to the creditor's place, to, at once, proceed against the principal debtor to enforce repayment. Therefore it is that any agreement of the creditor, which operates to extend the time of payment of the original debt and suspends the right to immediate action, is held to discharge the non-assenting indorser, or surety; as the law will presume injury to him thereby. The creditor may arrange with his debtor in any way, which does not result in effecting either of these results. He may take, as collateral to the old note, new security, or other notes, and, if time is not given to the debtor, the indorser, or surety, will not be discharged. To prevent such a result, the agreement must expressly reserve all the remedies of the creditor against the indorser, or surety; in which case the latter will be in a position to

pay immediately and, then, to proceed against the principal debtor. (As to the general rule, see *Gahn* v. *Niemcewicz,* 11 Wend. 312; *Putnam* v. *Lewis,* 8 Johns. 389; *Taylor* v. *Allen,* 36 Barb. 294; *Myers* v. *Welles,* 5 Hill, 463; *Fellows* v. *Prentiss,* 3 Den. 512; *Place* v. *McIlvain,* 38 N. Y. 96; *Hubbard* v. *Gurney,* 64 id. 457; *Morgan* v. *Smith,* 70 id. 537; *Pomeroy* v. *Tanner,* Id. 547; *Calvo* v. *Davies,* 73 id. 211.)

In this case, the agreement does not, in terms, reserve the holder's remedies against the defendant; for the bank was to "hold the old note, with Mr. Koehler's indorsement, as collateral, until the new notes are paid." That was the agreement. It is true that the plaintiff had previously returned these notes and insisted upon having the defendant's indorsement; but how can that fact import a new term into the eventual agreement? When they were, again, sent without that indorsement, they were retained without a demur to the suggestion that the company be allowed to make payment through them and that the old note be held as collateral. What the respondent claims, under the arrangement as made, is that, under the circumstances, and with the protest of the original note, what was meant and effected was the preservation of the defendant's obligation "as it originally existed with all his rights unimpaired." So far as the protest of the old note is concerned, that fact cannot help out the agreement, if that agreement did operate to suspend the plaintiff's right of action against the maker. The fact goes to show that the plaintiff accepted the arrangement and, doubtless, supposed the defendant's liability to have been fixed and preserved. How, then, is the agreement to be interpreted? It is not conditioned upon the defendant's consent to the arrangement; which would have left him free to proceed upon the old note by taking it up and, rejecting the new notes, to enforce repayment against the maker. Its effect was to preclude the plaintiff from maintaining any action upon the note against the maker;

for the company could have objected that, under their agreement, it was to be held as collateral, until the new notes were paid. Thus the right of action was, necessarily, suspended during the interval. In *Place* v. *McIlvain,* (*supra*), an action against the indorsers of a note, it appeared that, after the note had been protested for non-payment, the maker wrote, inclosing his check for the amount, dated nine days later, and requesting the holder to keep it till paid, when the note would be taken up. The maker made no response; retained the check and, upon its non-payment when due, sued the indorser upon the note. It was held that retaining the check was to be deemed an assent to the terms of the letter inclosing it and that, under the authorities, "the plaintiffs having suspended the right to sue the maker upon the note until the maturity of the check, the indorsers were thereby discharged." *Place* v. *McIlvain* presents a case of an extremely strict application of the rule; but it has, since, been recognized as an authority upon the rights of a surety, or indorser. (*Hubbard* v. *Gurney,* 64 N. Y. 457, 467; *Pomeroy* v. *Tanner,* 70 id. 547, 550.) In *Pomeroy* v. *Tanner,* also, an action against an accommodation indorser, after the indorsed note became due and without his consent, the plaintiffs agreed with the makers that the latter might draw time drafts on them, which should be sold and the proceeds, covering the amount of the note, credited. It was held that there was a clear intention to extend the time for the collection of the note and that the plaintiffs' acceptance and use of the drafts suspended their right of action and discharged the indorser. It was said that the makers of the drafts assumed "an original liability to the same extent as if they had given a new note or a check, and thus are brought directly within the cases which hold, that the taking of a bill or draft from the debtor, payable at a future day, suspends until then the creditor's right of action, and operates as an extension of credit, by which the

indorser not assenting to the transaction is discharged." (p. 551.) The effect of the agreement in this case was to bind the hands of the plaintiff. The new notes were to be held until their maturity and only, then, if default in their payment occurred, was the old note to be .enforced. If the new notes had been given as ·collateral to secure the payment of the old note, a different question would be presented. These notes were not collateral obligations; they represented the principal debt, or old note.

The difficulty is that in this arrangement there was evidenced the intention of the parties to suspend action upon the note until a future day. What could have been the purpose of giving new notes, with another's indorsement, except that it was intended to procure a definite extension of time ? Had matters remained as they were, upon the debtor's default in payment, the plaintiff might have been indulgent in enforcing the note and its remedies would not have been affected. The defendant would have been held and it would have rested with him to stand a suit, or to pay the debt· and to prosecute his remedy against the principal debtor. It was reasoned in the prevailing opinion at the Appellate Division that, considering what had occurred between the parties, this transaction between them was conditional and that they understood that the defendant's liability as indorser was preserved. It was said that "the fair inference from the entire transaction is that the plaintiff absolutely reserved its right to proceed forthwith against the defendant and that the extension of time was conditional upon the defendant's consent." This view, strongly presented as it is, is weakened by the necessary concession that there was an extension of time; by the absence of sufficient language in the agreement of the parties to· import its dependence upon some further act, as the consent of the defendant, and by the fact that· that consent was not had, nor, so far as the record discloses, previously sought. Within the rule of the authorities, as under the provi-

sions of our Negotiable Instruments Law, we must hold that the agreement of the parties did not distinctly, nor impliedly, reserve the right of the bank to proceed by immediate action against the defendant. Action against him, as against the maker, was suspended. In *Calvo* v. *Davies,* (73 N. Y. 217), it was said that "when, in an agreement between a creditor and the principal debtor extending the time of payment, the remedies against the surety are reserved, the agreement does not operate as an absolute but only as a qualified and conditional suspension of the right of action. The stipulation in that case is treated in effect as if it was made in express terms, subject to the consent of the surety." If the parties actually had in mind a reservation of the right of action against the defendant; if they intended that the transaction was subject to his consent, it would have been easy to have said so. It may be assumed that the plaintiff believed these conditions to have existed, or its assent would have been refused to the arrangement; but the obligation of such an indorser, as a surety, is *strictissimi juris.* He was entitled to insist that, within the strict application of the rule in such cases, he was released from his obligation by an agreement of the creditor with the principal debtor, to which he had not consented and which extended the latter's time of payment of its indebtedness.

For these reasons, the judgment should be reversed and a new trial had; with costs to abide the event.

CULLEN, Ch. J., VANN, WILLARD BARTLETT and COLLIN, JJ., concur; HAIGHT and HISCOCK, JJ., dissent.

Judgment reversed, etc.