(155 App. Div. 207.)

RIEHL v. AUSTIN.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. PRINCIPAL AND SURETY (§ 105*)—DISCHARGE—EXTENSION OF TIME OF PAYMENT.

Where after the maturity the holder accepted new notes of the principal merely as collateral security for the original note, and, though failing to immediately sue, made no binding agreement to extend the time of payment, a surety on the original note was not discharged.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 191, 192, 196, 201–210; Dec. Dig. § 105.*]

2. PRINCIPAL AND SURETY (§ 109*)—DISCHARGE—EXTENSION OF TIME.

That the payee of a note, after maturity, accepted other notes of the principal as collateral security, did not discharge a surety on the original note.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 219–222; Dec. Dig. § 109.*]

3. PRINCIPAL AND SURETY (§ 159*)—ACTIONS—PRESUMPTIONS.

Though a chattel mortgage upon stock be given to secure a promissory note, there is no presumption that the value of the chattels equals the amount of the note, and a surety has the burden of proving the value of such chattels or that the payee did not realize as much as he should from their sale.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. § 159.*]

Appeal from Trial Term, New York County.

Action by Charles G. Riehl against Arthur C. Austin. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Frederick Stewart, of New York City, for appellant.
B. F. Norris, of New York City, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J.   The action is on a promissory note for $3,000 made by the Architects' Standard Bronze Company, and indorsed by it and the defendant. The note was acquired by plaintiff, for value, before maturity, and came due November 25, 1909, when it was duly protested for nonpayment and notice given to defendant. The defense was that, simultaneously with the delivery of the note, a chattel mortgage was given by the company as collateral security therefor, and 600 shares of the capital stock of said company were also given as collateral security; that plaintiff, without the knowledge or consent of defendant, had satisfied the mortgage and had sold the stock. The defendant also pleads payment.

[1, 2] The plea of payment is predicated upon the fact that, after the note in suit had become due, the plaintiff received and accepted from the bronze company its successive notes for the indebtedness, payable from time to time; the last one apparently having been payable some time after June, 1910. The testimony both of the plaintiff and of a Mr. Rhodes, who had been bookkeeper of the bronze company and who delivered the so-called renewal notes to plaintiff, was, that plaintiff accepted the new notes, as he expressed it, as "collateral security" for the original note now sued upon, and that plaintiff positively refused to give up the original note. Plaintiff's own story is, and it is the only evidence upon the subject, that he never agreed to extend the time for the payment of the amount due, but simply waited, and began suit when he concluded that it was no use to wait longer. There is no evidence that any consideration passed for an extension of time, or that there was any consideration for the so-called renewal notes except the past-due debt of the bronze company. The defendant relies, to support this defense, upon National Park Bank v. Koehler, 204 N. Y. 174, 97 N. E. 468. In that case plaintiff held a note of a company, known as the Para Company, indorsed by one Koehler. When this note fell due, the company proposed to give a new obligation for the full amount payable in installments of $500 and $1,000 per week. The bank suggested that, instead of one note for the full amount due, there should be given several notes for $500 and $1,000, to be indorsed by Koehler, the indorser of the original note. Owing to Koehler's absence it was impracticable to obtain his indorsement, and it was finally arranged that the bank should take the new notes without Koehler's indorsement, holding the old note with Koehler's indorsement as collateral until the new notes are paid, which is the precise opposite of what plaintiff says he agreed to do in the present case. The bank accepted the new notes under this agreement, a charge of the amount of the old note was made upon its books against the Para Company, and also a credit entry made of the amount of the new notes as discounted. It was held, upon these facts, that the bank had effectually extended the time for the payment of the original note, and had thus released the accommodation indorser. The court, however, expressly recognized and reiterated the rule that so long as the holder of the note reserves the right to proceed to collect, at any time, upon the original note, he will not discharge an indorser by merely refraining to sue. On the contrary, it was held that the creditor may arrange with the debtor in any way which does not result either in

effectually extending the time of payment of the original debt, or suspend the right to immediate action. In the words of the court:

"He (the creditors) may take, as collateral to the old note, new security, or other notes, and, if time is not given to the debtor, the indorser or surety will not be discharged. To prevent such a result, the agreement must expressly reserve all the remedies of the creditor against the indorser or surety; in which case the latter will be in a position to pay immediately and then to proceed against the principal debtor."

In my opinion this was precisely the situation presented in the principal case, under the evidence. There was no valid, enforceable agreement to extend the time for the payment of the original note, for the so-called renewal notes were not accepted as payment and afforded no consideration for an agreement to give time. The plaintiff expressly refused to surrender the original note, and accepted the new notes only as collateral security for the payment of the old. In my opinion the defense of payment was not made out.

[3] As to the other defenses resting upon the sale or surrender of the security given for the note, it is plain that they are not complete, but only partial defenses by way of set-off. The stock was sold and the chattel mortgage satisfied long after the note became due. All that defendant is entitled to is a credit for the amount realized, or which might have been realized upon this security. The plaintiff proved what he received for the stock and expressed his willingness that the proportionate amount of this sum might be charged against him. It was open to defendant to show, if he could, that the stock was worth more than was realized upon it; but this he made no attempt to do. So as to the chattel mortgage. The defendant, for all that appears in the case, was entitled to have the value of the chattels applied to the payment of the note; but, as he was asserting an affirmative defense, it was for him to show what the value was. There is no presumption, where a chattel mortgage is given as part security for an indebtedness, that the value of the chattels equals the amount of the debt.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

