THE PEOPLE'S NATIONAL BANK OF PULASKI, Appellant, *v.* L. H. HEWITT, Respondent.

Third Department, June 21, 1929.

*Haskell & Maher* [*Albert Haskell, Jr.*, of counsel], for the appellant.

*Lusk, Buck & Ames* [*Clayton R. Lusk* of counsel], for the respondent.

VAN KIRK, P. J. The action was brought upon two notes, dated January 2, 1926 — one made by C. W. Colegrove for the sum of $12,500, and the other for like amount made by the Empire Collieries Company, by C. W. Colegrove, its secretary. On each of these notes the defendant Hewitt was the third indorser, and each was collateraled with $19,000, par value, of bonds of the Empire Anthracite Coal Company. The collieries company had taken over the coal mines of the Empire Company. The making and delivery of the notes was not in dispute. The questions which arose at the trial were raised by the answer.

The first defense is that plaintiff extended the time of payment of the notes for a good consideration and without the consent of Hewitt, an accommodation indorser.

It appears that defendant knew of all of the transactions and all of the efforts on the part of the bank to procure its money and on the part of the collieries company to dispose of the collateral, of course knowing what he himself had done. There is no evidence justifying a conclusion that the bank at any time made any binding agreement or promise to extend the time of payment of these notes; it simply refrained from prosecuting the notes. The court instructed the jury, in substance, that, if the bank agreed to extend the time of payment for a definite time, or until such time as the accounts of the coal company should show a favorable balance, the defendant was thereby discharged from liability.

The Uniform Negotiable Instruments Act has been adopted in Virginia. (See Virginia Code, § 5682, subd. 6; Uniform Neg. Inst. Act, § 120, subd. 6.) Section 201 of our Negotiable Instruments Law provides:

" A person secondarily liable on the instrument is discharged:
" 1–5. *  *  *

" 6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless the right of recourse against such party is expressly reserved."

To occasion discharge of an indorser the agreement must be based on a valid consideration and must be sufficient to preclude the creditor, during the extended period, from enforcing the debt against the principal. (*National Citizens' Bank* v. *Toplitz*, 178 N. Y. 464; *Fallkill Nat. Bank* v. *Sleight*, 1 App. Div. 189; 8 C. J. 426, § 628 *et seq.*) So long as the holder reserves the right to proceed thereon at any time, he does not discharge the indorser. If he merely refrains from suing, the indorser is not discharged. (*Riehl* v. *Austin*, 155 App. Div. 207.) The rule is that an accommodation indorser is entitled to have the engagement of the principal debtor preserved without variation in its terms. The reason for the rule is that his right must not be affected upon the maturity of the indebtedness to make payment and by subrogation to the creditor's place to at once proceed against the principal debtor to enforce repayment. (*National Park Bank* v. *Koehler*, 204 N. Y. 174.) Here there has been no agreement for an extension of time of payment; in fact such extension was directly refused by the bank when asked. No right of the defendant has been invaded. He could have paid the note, taken the collateral and proceeded to collect against those primarily liable. This the defendant did not wish to do; in fact said he could not do; nor did he wish the bank to proceed by action. Also, had he sold the bonds, he could at any time have paid the notes. There was no agreement, express or implied, made by the bank that could have justified it in refusing to accept payment at any time; it was constantly seeking payment. Defendant evidently did not succeed in selling the bonds, for the sales of which he says he had made agreements; no offer to purchase or take over the bonds was made to the bank on his behalf or on behalf of any intended purchaser. It is evident that the bank deferred the enforcement of its notes, but it is equally plain that what it did was with the knowledge of this defendant and in no wise contrary to his wish until the time this action was begun.

The court also submitted to the jury the question whether Mr. Draper, with authority from the bank, agreed to proceed with diligence in the sale of the bonds. The evidence does not justify the presentation of this question. There is no evidence that Mr. Draper gave anything further than assent that Mr. Hewitt and

those interested with him should proceed to sell the bonds as soon as possible; and it is a well-recognized principle that a bank, holding a matured note with collateral, may proceed to collect the note by action, or may sell the collateral, or, if necessary, do both. I think this disposes of the defendant's second and third points.

The fourth question is whether the bank had in its possession deposits, belonging to the makers or prior indorsers of these notes, upon which it had a lien for the payment of the notes, which deposits it should have retained to assure payment. The defendant claims that plaintiff had such deposits, but failed to protect him. He bases this claim upon the contract set forth in the collateral notes as follows: " It being further understood and agreed that The People's National Bank of Pulaski, Va., shall have a like lien upon any and all funds, stocks, bonds, notes and other property at any time in the hand of the said bank belonging to the maker or * * * indorsers * * * hereof, * * * which lien shall be enforceable in like manner and shall be subject to all the provisions hereinabove and before mentioned and set out." There is " hereinabove mentioned " the following: " and upon failure to comply with any such demand, this obligation shall forthwith become due, with full power and authority, to the holder thereof, or assigns, in case of such default, or of the non-payment of any of the liabilities above mentioned at maturity, to sell, assign and deliver the whole, or any part of such securities, or any substitutes therefor or additions thereto, at any broker's board, or at public or private sale, at their option, at any time or times thereafter, without advertisement or notice to the undersigned." So that the enforcing of any lien was to be by the sale of the property on which the lien rested. The word " property " does not cover deposits in the bank. *First,* when moneys are deposited in a bank, those moneys become the property of the bank and the depositor becomes the creditor of the bank to the amount deposited. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219.) The deposit went into the common funds of the bank to be loaned or used in any manner permissible under the law. To avail himself of his credit the depositor's check is presented and when accepted by the bank becomes its obligation to pay. (Neg. Inst. Law, § 325.) There were no funds, by whomsoever deposited, on which the bank had a lien or had a right to hold for the payment of these notes. *Second,* as a partial answer, all moneys deposited in the bank, after May 29, 1926, were exclusively in the hands and in the name of the creditors' committee and not subject to the disposition of any party to this note.

The amount unpaid upon the notes is not disputed. The

collateral was sold and it is not claimed that the sale was in any wise unfairly conducted, or that the amount received was inadequate.

At the close of the evidence the plaintiff moved for the direction of a verdict, which motion was denied. This motion should have been granted. The judgment should be reversed· and the motion made at the close of the evidence should be granted, with costs.

HINMAN, WHITMYER, HILL and HASBROUCK, JJ., concur.

Judgment and order reversed on the law and facts, with costs, and plaintiff's motion for direction of verdict, made at the close of the evidence, is granted, and judgment for plaintiff is directed thereon, with costs.