OPINION OF THE COURT
Simons, J.
Plaintiff brought this action against defendant, the estate of the surety of one Lieberman, to recover on a guarantee of Lieberman’s debt. The estate’s answer raised several defenses but on this appeal we are concerned only with the contention that it has been released from its undertaking because plaintiff altered the original contract with Lieberman.
Plaintiff alleges in its complaint that on November 1, 1983 it loaned Marvin Lieberman $280,000 for three months at 12% interest and that Joel Schneierson, defendant’s testator, guaranteed payment.* Lieberman failed to pay the debt at maturity despite repeated requests that he do so. On May 28, 1985 he confessed judgment and, on July 11, 1986, plaintiff entered judgment on the confession for $344,500. Plaintiff then demanded defendant satisfy the judgment and commenced this action when it failed to do so. Plaintiff acknowledges that it did not proceed against Lieberman immediately and that Lieberman paid interest after maturity. However, it asserts in its motion papers that: "Plaintiff’s accommodation to the principal obligor to permit him additional time to make *315 the payment did not prejudice or effect [sic] the defendant or its guarantee in any manner.”
Defendant contends that the "accommodation” was a new agreement between plaintiff and Lieberman, extending the loan and that plaintiff received payments of interest at 12% after the original debt had matured. It asserts that this extension, supported by consideration in the form of a 12% interest obligation rather than the legal rate due after default (i.e., 9%; see, CPLR 5004), changed the original three-month contract to one continuing the loan for a reasonable time and discharged it from its undertaking on the original note. Based on these facts, the parties made cross motions for summary judgment. Special Term denied both motions. Only defendant appealed to the Appellate Division, which reversed the order insofar as appealed from, and granted summary judgment to defendant. We granted leave to appeal and now reverse.
Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation. Suretyship is a contractual relation and thus the rule is stated that the creditor and the principal debtor may not alter the surety’s undertaking to cover a different obligation without the surety’s consent. If they do so the surety is discharged because the parties have substituted a new contract, to which it never agreed, for the original (Becker v Faber, 280 NY 146, 148-149; see generally, 10 Williston, Contracts § 1211 et seq. [3d ed 1967]). If the surety is to remain liable on its undertaking, its right to make payment of the debt upon maturity of the indebtedness and, by subrogation to the creditor’s rights, to proceed against the principal debtor to obtain repayment may not be affected without its consent.
An obligation is altered when the debtor is discharged from, the original contract and a new contract is substituted in its place. The test is whether there is a new contract which will be enforced by the courts (Becker v Faber, 280 NY 146, 151, supra; 10 Williston, Contracts §§ 1221, 1239 [3d ed 1967]; Simpson, Suretyship, at 355). Obviously, if the debtor can assert a new contract in defense to an action on the original contract the surety may do so also and, since it did not guarantee performance of the new agreement, it cannot be held answerable for the principal debtor’s default (see, 10 Williston, Contracts § 1239 [3d ed 1967]). Conversely, if the principal debtor is bound by the original contract (because the new agreement is unenforceable for lack of consideration or *316 fraudulently induced, for example) the original debt remains undischarged, the surety is answerable for the principal debt- or’s default and the surety’s right of subrogation against the debtor in accordance with the terms of the original contract is preserved.
If the creditor and principal debtor agree to extend maturity, then under the general rule the surety is discharged even if the term is extended only a few days (National Park Bank v Koehler, 204 NY 174; 10 Williston, Contracts § 1222 [3d ed 1967]). Indulgence or leniency in enforcing a debt when due is not an alteration of the contract, however. An unenforceable agreement to give time is merely revocable permission to defer performance. If the creditor retains the right to demand payment of the debt according to its original terms the surety is not discharged (Becker v Faber, supra; Powers v Silberstein, 108 NY 169,170).
Applying these rules to the present case, we conclude there are questions of fact whether plaintiff and Lieberman made an enforceable agreement to extend the terms of the debt. Some authorities have held that the payment of interest after maturity, standing alone, constitutes consideration and from that act a new contract to extend the loan for a reasonable time will be implied (see, e.g., Fanning v Murphy, 126 Wis 538, 105 NW 1056, 1063 [Dodge, J., concurring]; Strong v Sunset Copper Co., 9 Wash 2d 214, 114 P2d 526; Hackin v First Natl. Bank, 101 Ariz 350, 419 P2d 529; see also, Restatement [Second] of Contracts § 73, illustration 8). Our decisions, however, have consistently held otherwise (Becker v Faber, supra; Olmstead v Latimer, 158 NY 313; Kellogg v Olmsted, 25 NY 189; see also, New York Life Ins. Co. v Casey, 178 NY 381).
Defendant contends that the present case is distinguishable from earlier New York decisions because here plaintiff benefited from payment of an interest rate higher than that required by law. It notes that in Becker the rate was actually reduced after the debt matured and in Olmstead v Latimer (supra) it remained the same. It also cites cases in which the rate, although increased, was increased to correspond with a higher prevailing legal rate of interest (see, e.g., Neukirch v McHugh, 165 App Div 406; Sands v Gilleran, 159 App Div 37).
Notwithstanding these differences, and assuming interest at 12% was in fact paid, we believe that the rule stated in Olmstead v Latimer (supra) should be followed and that the acceptance of contract interest, even if it is higher than the *317 prevailing legal rate of interest, should not bind the parties to extend the loan for a reasonable additional time. The Olmstead rule has been the law of this State for over 100 years and has the force of precedent and long acceptance by the business community. It is also supported by sound policy considerations, for any other rule would require a creditor to declare default and institute legal proceedings to collect the debt when the loan matures if payment is not made immediately. Even a delay of a day or two could risk loss of the surety’s undertaking (see, Becker v Faber, supra; National Park Bank v Koehler, supra). A lenient creditor’s only safe alternative would be to forego postmaturity interest, a result which penalizes forbearance and is contrary to the law’s preference for voluntary resolution of disputes. Conversely, the surety is not without remedies. It may protect itself against forbearance by reserving in the original contract the right to demand immediate default or, if it feels prejudiced by delay in enforcing the debt, it may pay the debt upon default and proceed by way of subrogation against the principal debtor to enforce repayment (see, National Park Bank v Koehler, 204 NY 174,179-180, supra).
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judgment denied.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 The note reads as follows:
"Nov. 1, 1983
"Bier Pension Plan Trust "262 1/2 E. 62 St.
"New York, N.Y.
"Re: $280,000 Loan "Dear Mr. Bier:
"We are herewith guarantying the loan of $280,000 made this day to Marvin Lieberman for a period of three months with interest at 12% per annum. If the loan is not paid at maturity, we guaranty its payment immediately.
"s/Marvin Lieberman
"s/Joel Schneierson”.