■ MIDLAND STEEL WAREHOUSE CORP., Appellant, v GODINGER SILVER ART LTD., Respondent. [714 NYS2d 466] —Order, Supreme Court, New York County (Alice Schlesinger, J.), entered August 26, 1999, which, in this action alleging breach of a guarantee agreement, granted defendant's motion for sum-

mary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

Defendant Godinger Silver Art Ltd. attempts to avoid its liability as guarantor of debts incurred by nonparty Regency Metal Stamping, Inc. on the ground that sales made by plaintiff to Regency exceeded that company's $50,000 line of credit. However, defendant solicited credit on behalf of Regency every year in a like amount, and its liability under the several guarantees is not $50,000 in the aggregate but $50,000 for each and every year subject to such an agreement. The line of credit comprises an agreement between Regency and plaintiff and, although sought by defendant, represents a separate contract to which defendant is not a party. Thus, the extent of Regency's obligation to plaintiff under a contract for the credit sale of goods has no bearing on the extent of defendant's obligation to plaintiff under its guarantee of payment.

Plaintiff Midland Steel Warehouse Corp. entered into a series of letter agreements with defendant, the wording of which is virtually identical. These agreements cover 1997, the year for which plaintiff seeks recovery, and the preceding several years. The letters are all signed by William Lefkowitz, president of defendant Godinger, and are typed on the corporation's letterhead. The agreement dated January 1, 1997 reads:

"Dear Mr. Allen:

"This is to notify you that we would like to open a credit line for the amount of $50,000.00 which will be valid until December 31, 1997, for:

"Regency Metal Stamping, Inc.

"133 North Seventh Avenue

"Brooklyn, NY 11211

"You can bill Regency Metal or Godinger Silver and we will act as the personal guarantor for the amount of $50,000.00.

"Terms net 45 days,1/2% discount if paid within 10 days.

"Should you require any further information, please do not hesitate to contact me and I will be happy to assist you.

"Sincerely,

"William Lefkowitz."

The complaint states that plaintiff Midland Steel, at the request of Regency Metal Stamping, sold and delivered goods at an agreed price of $54,140.28 during 1997; that payment has been demanded and not received; and that defendant guaranteed the obligation in writing. The complaint therefore demands $54,140.28, together with costs and disbursements.

Defendant's answer states affirmative defenses alleging payment and defects in the merchandise. It asserts counterclaims disputing the inclusion of certain invoices within the guarantee and alleging that plaintiff breached the contract of sale. Defendant brought a motion pursuant to CPLR 3212 seeking dismissal of the complaint on the ground it fails to state a cause of action (CPLR 3211 [a] [7]). The affirmation in support of the motion recites that, immediately prior to defendant's execution of the guarantee, Regency was indebted to plaintiff in the amount of $75,000; that the guarantee does not extend to "pre-existing debt"; and that the sale of merchandise in excess of $50,000 constitutes a "material or substantial alteration" of the terms of the contract "made without the surety's consent" and, therefore, "the surety is discharged because the parties have substituted a new contract, to which it never agreed, for the original."

Supreme Court adopted this reasoning, concluding that "by attempting to collect monies that were due in prior years, Midland Steel is altering the terms of the guaranty. Accordingly, the court finds that Godinger's obligation as guarantor under the 1997 letter agreement is discharged."

"A guarantee is an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation. The principal debtor is not a party to the guarantee and the guarantor is not a party to the principal obligation" (*Shire Realty Corp. v Schorr*, 55 AD2d 356, 359-360, citing 57 NY Jur, Suretyship and Guaranty, § 15). "The guarantor's liability accrues only after default on the part of the principal obligor" (*Brewster Tr. Mix Corp. v McLean*, 169 AD2d 1036, 1037, citing *General Phoenix Corp. v Cabot*, 300 NY 87, 95).

Because the surety's obligation is distinct, the parties to the underlying contract may not unilaterally augment the surety's liability. As stated by the Court of Appeals, "Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation" (*Bier Pension Plan Trust v Estate of Schneierson*, 74 NY2d 312, 315). "As a general rule, any material or substantial alteration of the terms of a contract, for whose performance a surety is bound, when made without the surety's consent, releases the surety from his or her obligations" (*Central Fed. Sav. & Loan Assn. v Pergolis*, 173 AD2d 587, 589). This principle, however, applies not to the direct alteration of the guarantee to which the surety is a party, but to "any alteration of the contract to which his guarantee applies" (*Congregation Ohavei Shalom v Comyns*

*Bros.*, 123 AD2d 656, 656-657), which indirectly operates to modify the extent of the guarantee. The rationale is that "the creditor and the principal debtor may not alter the surety's undertaking to cover a different obligation without the surety's consent. If they do so the surety is discharged because the parties have substituted a new contract, to which it never agreed, for the original" (*Bier Pension Plan Trust v Estate of Schneierson*, 74 NY2d 312, 315, *supra*).

The matter at bar does not concern a modification of the contract between plaintiff and Regency, the principal obligor. Rather the pleadings reflect a relatively narrow dispute involving the sales to Regency that are subject to defendant's guarantee and the extent of defendant's liability thereunder. According to the instrument drafted by defendant Godinger, it solicited a "credit line for the amount of $50,000.00" on behalf of Regency, and plaintiff then extended credit to Regency in the amount of $54,140.28. That the total purchases exceed the line of credit guaranteed by defendant does not constitute an alteration of the extent of defendant's liability. Simply put, no amount of sales under the line of credit, to which defendant is not a party, will serve to increase its liability under the guarantee, under which plaintiff's recovery is limited to $50,000.

As to the debt allegedly attributable to goods sold to Regency during the previous year, the operative question is not whether the 1997 agreement extends to a "pre-existing debt", as defendant frames the issue, but merely which unpaid invoices are covered by which of the various guarantees, each securing payment for merchandise sold to Regency under the line of credit extended for a particular calendar year. The various letter agreements reflect a course of dealing pursuant to which Regency was extended a line of credit of $50,000 for a calendar year and defendant undertook the independent obligation to "act as the personal guarantor for the amount of $50,000.00" in the particular calendar year. While the amounts may be identical, the extension of credit by plaintiff to Regency is independent of the guarantee of payment by defendant to plaintiff (*see, American Trading Co. v Fish*, 42 NY2d 20, 24, 27). Nothing in the letter agreement drafted by defendant suggests that plaintiff, to avail itself of defendant's guarantee, was obligated to demand cash in advance of any sale under the line of credit extended to Regency that would cause the unpaid balance for goods sold and delivered to Regency to exceed $50,000.

As to debts incurred by Regency before January 1, 1997, plaintiff may not recover for purchases made by Regency dur-

ing prior calendar years under the agreement sued upon. However, plaintiff may bring a separate action upon each letter agreement up to the amount guaranteed therein within the period of limitations applicable to contract actions. Concur— Williams, J. P., Tom, Mazzarelli, Rubin and Andrias, JJ.