GALLAGHER'S STUD, INC., Appellant-Respondent, v ROBERT F. FISHMAN, Respondent-Appellant.

Third Department, April 5, 1990

### APPEARANCES OF COUNSEL

*Rapport, Meyers, Griffen & Whitbeck (David L. Krech* of counsel), for appellant-respondent.

*Brian C. Baker* for respondent-appellant.

### OPINION OF THE COURT

MAHONEY, P. J.

This action for breach of contract arises out of a dispute concerning the management of a thoroughbred race horse named "Lothario". Defendant and Harold Burgher purchased

the stallion in 1975 for $60,000.[1] In 1979, defendant and Burgher sold a one-half interest in Lothario to Gallagher's Farm, Inc. Thereafter, on May 16, 1979, the three owners (defendant, Burgher and Gallagher's Farm) entered into a syndicate agreement which set forth the owners' rights and obligations with respect to the breeding, care and management of Lothario.

Pursuant to the agreement, the ownership of Lothario was divided into 40 equal and undivided shares, or fractional interests. The agreement also provided that Lothario was to stand at stud at Gallagher's Farm, under the supervision of plaintiff, the designated syndicate manager. Each owner of a share or fractional interest in Lothario was entitled to one free "nomination", or stud service, to the stallion during each breeding season. Each nomination was transferable, subject to specified conditions. Under the terms of the agreement, plaintiff was charged with the responsibility of exercising "all reasonable authority and discretion with respect to the keep, maintenance, care, management, breeding and supervision of the Stallion". In return, the syndicate members were required to pay plaintiff "the prevailing rate for the board, keep and maintenance, including advertising, of the Stallion, with each Fractional Interest to bear one-fortieth ($\frac{1}{40}$) of these expenses". Plaintiff was required to render a quarterly statement of expenses to each member of the syndicate, with that member's pro rata share due within 30 days after the date of the statement. The agreement also covered compensation for plaintiff.

Plaintiff's first cause of action, in its amended complaint, sought to collect $26,026.32 from defendant as his pro rata share of the syndicate's expenses.[2] The second cause of action, to recover in quantum meruit for the same services alleged to have been performed pursuant to the agreement set forth in the first cause of action, was withdrawn at the conclusion of the trial.

Defendant, by his answer, denied the allegations contained in the amended complaint and set forth five affirmative defen-

---

1. Harold Burgher, who was sued in a separate but consolidated action, died prior to trial. Burgher's estate settled with plaintiff following the trial and thus is not a party to this appeal.

2. Because defendant and Burgher held only 20 of the 40 fractional interests or shares, they could not individually or collectively call a meeting to resolve their differences with plaintiff pursuant to the terms of the syndicate agreement.

ses and three counterclaims. The court dismissed all five of defendant's affirmative defenses and the first counterclaim, and the third counterclaim was withdrawn. At the conclusion of the trial, the jury returned a verdict in favor of plaintiff on the first cause of action in the sum of $8,477.50. The jury awarded defendant $3,500 on the second counterclaim, said sum being deducted from the amount awarded to plaintiff. Plaintiff moved to set aside the verdict as inadequate and both parties moved for judgments notwithstanding the verdict, but the court denied these motions. The parties cross-appeal from the judgment entered pursuant to the verdict.

■ Plaintiff's assertion that no rational hypothesis of the evidence can support the jury's award of only $8,477.50, and accordingly the verdict should be set aside, is without merit. The decision to grant or deny a motion to set aside a jury verdict rests in the sound discretion of the Trial Judge (see, *Palermo v Gambitsky*, 92 AD2d 1005, 1006; *see also, Cohen v Hallmark Cards*, 45 NY2d 493, 498-499), and unless no rational reason exists for resolving the factual issues in the manner the jury chose, the motion must be denied (see, *Rowe v Board of Educ.*, 120 AD2d 850, 851, *lv denied* 68 NY2d 609). Here, plaintiff's president testified at trial that as syndicate manager, he billed all shareholders quarterly. Each quarterly bill particularized charges for board and veterinary, blacksmithing, advertising and other maintenance costs pertaining to Lothario. The proof was that the board rate was $600 per month. While defendant did not contradict plaintiff's proof that he stopped paying quarterly bills altogether in April 1982, he did challenge the amount charged for board, the costs incurred for advertising and the fees charged for entering Lothario in the Breeders Cup and Stallion Stakes. Clearly, such evidence when juxtaposed to plaintiff's proof raised a factual issue of whether defendant breached the syndicate agreement by failing to pay his share of the costs to maintain Lothario. That issue was properly resolved by the jury. As to the amount of damages awarded, the jury, in addition to being able to review and evaluate the bills submitted to defendant by plaintiff, had the opportunity to assess the parties' credibility, and the amount awarded presumably reflects what the jury believed was a fair measure of damages. In sum, the proof at trial presented a classic case for jury resolution and Supreme Court did not err in denying plaintiff's motion.

■ However, we reach a different result with respect to Supreme Court's denial of plaintiff's motion to dismiss defen-

dant's second counterclaim. That counterclaim alleged that "plaintiff was negligent in failing to provide the defendant with appropriate documentation and * * * has compromised the defendant's chance to recover from a Mrs. Janice Kennedy". The genesis of this counterclaim was a breeding contract between defendant and Kennedy. Pursuant to this breeding contract, defendant allegedly, through plaintiff, sold Kennedy one of his nominating dates with Lothario for a $3,500 stud fee. The breeding contract further provided that payment of the stud fee was due on or before September 1, 1980 unless a satisfactory veterinary certificate certified that the mare was not in foal. It provided further that the stud fee would be returned upon submission of a veterinary certificate verifying that a live foal was not born in 1981. It was plaintiff's practice to send a postcard to the mare's owner with an appropriate box to be marked if the mare was in foal. Plaintiff's secretary received a card back from Kennedy indicating that her mare was in foal. However, the card was not forwarded to defendant. When defendant had not received the stud fee at the end of the breeding season in 1981, he contacted plaintiff's secretary, who provided defendant with a copy of a letter from Kennedy's veterinarian. This letter advised that the Kennedy mare was bred in July 1980 but that the veterinarian was unable to tell if she was in foal by September 1, 1980, the date the stud fee was due, and further that she was not in foal in the spring of 1981.

Defendant did not offer at trial any evidence that Kennedy's mare ever had a live foal. The only proof offered in support of his second counterclaim was that plaintiff was negligent in failing to timely provide him with appropriate documentation of the Kennedy mare's status, i.e., the postcard, which, he asserts, compromised his position and was the proximate cause of his inability to recover the stud fee from Kennedy. We disagree. Plaintiff forwarded to defendant the letter of the veterinarian retained by Kennedy advising that the mare was not in foal in 1981. Thus, if Kennedy had paid the fee on September 1, 1980, defendant would have had to refund the $3,500, thereby making plaintiff's failure to forward the postcard irrelevant. Further, even if we were to accept defendant's contention that the letter submitted by plaintiff was not a "veterinary certificate" within the context of the breeding contract, then defendant would have been able to collect the nomination fee from Kennedy since she did not present a satisfactory veterinary certificate, the contractual requirement

necessary to avoid payment. In either case, the missing postcard had no bearing on the outcome of defendant's claim against Kennedy.

■ Next, we also conclude that Supreme Court properly dismissed all five of defendant's affirmative defenses, which plead, according to defendant, "various conditions precedent in the syndication agreement which plaintiff had not performed". Any such affirmative defense must be supported by factual pleadings, which must be stated "specifically and with particularity" (CPLR 3015 [a]; *see, Blake Realty v Gilligan,* 155 AD2d 816). Our review of the affirmative defenses discloses that each fails to adequately state a legal theory supported by specific facts and, accordingly, fails to satisfy the required standard. We further find no error in the dismissal of the first counterclaim.

■■ Turning to defendant's remaining issues, we conclude that even if Supreme Court erred in denying defendant's motion for leave to amend his answer and counterclaim pursuant to CPLR 3025, such error was harmless as it failed to prejudice defendant's presentation of his case at trial *(see, Plattsburgh Distrib. Co. v Hudson Val. Wine Co.,* 108 AD2d 1043, 1044). Supreme Court did not abuse its discretion in denying defendant's motion for an adjournment since defense counsel was aware when he took over the case that the matter had been certified as ready for trial for over three years *(see, Klombers v Lefkowitz,* 131 AD2d 815, 816, *lv denied* 70 NY2d 614). Finally, the evidentiary challenges raised by defendant are without merit.

KANE, CASEY, LEVINE and MERCURE, JJ., concur.

Judgment modified, on the law, with costs to plaintiff, by reversing so much thereof as awarded plaintiff $4,977.50 plus interest of $40.50; plaintiff awarded $8,477.50 plus interest calculated thereon from the date stated in the judgment; and, as so modified, affirmed.