■ NETTIE M. JONES, Appellant-Respondent, v HENRY GELLES, Respondent-Appellant, and EDWIN H. WEIBRECHT, JR., Respondent.—Yesawich, Jr., J. Cross appeals from an order and judgment of the Supreme Court (Dier, J.), entered July 14, 1989 in Essex County, upon a verdict rendered in favor of defendant Henry Gelles.

Pertinent facts underlying this case have already been summarized in two earlier appeals (see, 125 AD2d 794; 140 AD2d 819). In the first appeal, we reversed an order awarding defendant Henry Gelles summary judgment because "there exist[ed] triable issues of fact regarding whether the series of agreements in 1983 [between plaintiff, the creditor, and defendant Edwin H. Weibrecht, Jr., the principal] effected a discharge of the surety [Gelles]" (Jones v Gelles, 125 AD2d 794, 795, supra). A six-day trial followed, at the conclusion of which the jury unanimously determined that the 1983 agreement and indemnity agreement (hereinafter collectively referred to as the 1983 agreements) released Gelles from his

suretyship obligation. Plaintiff claims on this appeal that she was entitled to judgment as a matter of law, that Supreme Court committed various evidentiary and charging errors which deprived her of a fair trial and, further, that the court did not treat her fairly during the course of the proceedings. We disagree and accordingly affirm. Although Gelles has cross-appealed from Supreme Court's denial of his pretrial motion to reassert an indemnification cross claim against Weibrecht, the principal, our resolution of plaintiff's appeal obviates any need to reach this aspect of Gelles' cross appeal.

While a creditor may covenant not to sue the principal on a promissory note without adverse consequence to any claim the creditor asserts against the surety, as a matter of law a release discharges the surety *(Jones v Gelles,* 125 AD2d 794, *supra)* because it impairs the surety's right of subrogation against the principal *(see,* 63 NY Jur 2d, Guaranty and Suretyship, §§ 255-256, at 350-351). Here, plaintiff avows that the testimony and evidence irrefutably established that the 1983 agreements were no more than plaintiff's acknowledgment that the principal, Weibrecht, had satisfied his obligation such that plaintiff would have no further claim against him. Plaintiff's argument notwithstanding, the proof is equivocal. Unquestionably, some language in the indemnity agreement tends to support plaintiff's contention that, by entering into that agreement, she did not intend to relinquish her claim against Gelles, the surety. On the other hand, the indemnity agreement does not unambiguously show plaintiff's intention on its face; nor does it contain an express reservation, which would entitle it to be regarded as a covenant not to sue, of her right to seek reimbursement from Gelles, as guarantor *(see, Plath v Justus,* 28 NY2d 16, 19; *see also,* General Obligations Law § 15-105 [1]; *National Bank v Kory,* 63 AD2d 579, 580, *lv denied* 45 NY2d 712).

As for the other agreement entered into between plaintiff and the principal, Weibrecht, it specifically provided that Weibrecht's obligations were "fully satisfied and that Weibrecht [was] *relieved* of any further liability to [plaintiff] pursuant to * * * the [1977 stock] purchase agreement, promissory note and escrow agreement" (emphasis supplied). This language suggests an intention to renounce or discharge a claim, the defining characteristic of a release *(see,* 19 NY Jur 2d, Compromise, Accord, and Release, § 65, at 403). Moreover, the intent of the contracting parties is not entirely clear from the testimony. Weibrecht's attorney, who helped draft the 1983 agreements, opined that they constituted not merely a

covenant not to sue but also acted to release Weibrecht, the principal, from liability. And there was evidence that plaintiff's own attorneys believed that the 1983 agreements could be interpreted as effecting the principal's release. As the jury could rationally have found for Gelles based upon the evidence presented, a verdict in his favor was proper *(see, Gallagher's Stud v Fishman,* 156 AD2d 50, 53).

Plaintiff takes issue generally with Supreme Court's charge to the jury and in particular the court's failure to charge in accordance with *National Bank v Kory (supra)* that a surety may consent in advance to release the debtor, in which event an express reservation of rights by the creditor against the surety is unnecessary. There was no error here, however, for the provision in the personal guarantee executed by Gelles recites the parties' understanding that Gelles' obligation could not be satisfied by returning the stock certificates; such a provision does not equate to a statement indicating Gelles' express consent in advance to the principal's future release *(compare, supra).*

Plaintiff also questions Supreme Court's refusal to charge that a surety's liability on a guarantee may exceed that of the principal *(see,* 63 NY Jur 2d, Guaranty and Suretyship, § 122, at 177). Irrespective of whether Gelles actually assumed a greater liability, a fact he gainsays, in the circumstances prevailing here Supreme Court correctly refused to give that charge. Generally, the liability of the surety equals that of the principal (63 NY Jur 2d, Guaranty and Suretyship, § 119, at 173). In some situations, however, a surety may not only assume greater collateral responsibility *(see, American Trading Co. v Fish,* 42 NY2d 20, 26), but be liable on the guarantee even though the creditor could not recover the loan amount from the principal. For example, the surety may still be obligated to pay even though the time for commencing the action against the principal may have run *(see, American Trading Co. v Fish, supra),* or not yet accrued *(see, e.g., Cross v Rosenbaum,* 7 Misc 2d 309, 311; *Chemical Corn Exch. Bank v Brous,* 6 Misc 2d 372), or if the surety expressly assumed a liability not dependent upon the principal's obligation *(see, e.g., Manufacturers Hanover Trust Co. v Green,* 95 AD2d 737, *appeal dismissed* 61 NY2d 760). Significantly, in none of these examples did the creditor's actions, as here, alter the surety's ability to seek reimbursement from the principal. As we have not been made aware of any authoritative support for extending liability to a surety in the circumstance where the credi-

tor's conduct extinguishes the guarantor's recoupment rights, we cannot fault Supreme Court's refusal to so charge.

In addition, plaintiff urges that at trial Gelles was permitted to elicit irrelevant and prejudicial testimony supporting the theory that plaintiff's attorneys at the time fraudulently attempted to conceal the existence of the 1983 agreements from Gelles (see, Richardson, Evidence §§ 4, 5, at 3, 5 [Prince 10th ed]). The pivotal issue concerned the effect of these agreements on Gelles' surety obligation. As the agreements themselves were not determinative (see, Jones v Gelles, 125 AD2d 794, supra), evidence of what the parties intended when they executed them was therefore relevant and hence admissible (see, Richardson, Evidence §§ 4, 5, at 3, 5 [Prince 10th ed]; cf., § 625, at 622). The challenged testimony tended to support Gelles' thesis that plaintiff expected the 1983 agreements to release the principal from his obligation. Contrary to plaintiff's contention, this court's earlier dismissal of Gelles' fraud counterclaim for pleading inadequacy (see, Jones v Gelles, 140 AD2d 819, 821, supra) did not preclude Gelles from offering the challenged testimony. Furthermore, we disagree with plaintiff's insinuation that the prejudice, if any, occasioned by this evidence outweighed its probative value (see generally, 57 NY Jur 2d, Evidence and Witnesses, § 188, at 409).

Additionally, plaintiff contends that Supreme Court erroneously permitted Gelles on cross-examination to question plaintiff's attorney about confidential correspondence concerning her representation. Because plaintiff chose to have her attorney testify about their negotiating intent, she impliedly waived the attorney-client privilege (see, Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835; Kitz v Buckmaster, 45 App Div 283; CPLR 4503 [a]; see also, Drimmer v Appleton, 628 F Supp 1249, 1252).

Not unexpectedly, errors occurred during the course of the trial of this rather complex matter. The errors made, however, were not, in our view, sufficient in magnitude or number to warrant a new trial; in short, we find there is no significant probability that the jury would reasonably have reached a different result had the trial been error free (Fisch, New York Evidence § 25, at 16-17 [2d ed]).

Finally, in the absence of any asserted damage flowing from plaintiff's allegedly fraudulent activity, we cannot fault Supreme Court's exercise of its broad discretion to refuse to allow Gelles to amend his pleadings to assert a counterclaim against plaintiff (see generally, Murray v City of New York, 43 NY2d 400, 404-405).

Order and judgment affirmed, without costs. Mahoney, P. J., Casey, Weiss, Yesawich, Jr., and Mercure, JJ., concur.