[640 NYS2d 287]

In the Matter of the Estate of JOHN P. SAXTON, Deceased.
MANUFACTURERS AND TRADERS TRUST COMPANY, as Trustee
of the Trust Created by the Last Will of JOHN P. SAXTON,
Deceased, Appellant; MARY R. CRITTENDEN et al., Respon-
dents, Estate of ANNA E. SAXTON, Appellant.

Third Department, March 21, 1996

## APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear, L. L. P.,* Buffalo *(Jerrold S. Brown* of counsel), for Manufacturers and Traders Trust Company, appellant.

*Hinman, Howard & Kattell,* Binghamton *(James M. Hayes* of counsel), for Estate of Anna E. Saxton, appellant.

*Sayles, Evans, Brayton, Palmer & Tifft,* Elmira *(Clover M. Drinkwater* of counsel), for Mary Rita Crittenden, respondent; and *Bond, Schoeneck & King,* Syracuse *(James N. Seeley* of counsel), for Mary Rita Crittenden and another, respondents.

## OPINION OF THE COURT

PETERS, J.

John P. Saxton (hereinafter decedent) died on November 6, 1958 leaving his spouse, Anna E. Saxton, along with their two daughters, respondents Mary Rita Crittenden and Patricia Mc-Donald. Pursuant to the terms of his will, decedent bequeathed the residue of his estate to Endicott Trust Company, in trust, with the net income of such trust to be paid to Anna Saxton during her lifetime. Upon her death, the balance of the trust principal, plus any accrued and unpaid income, was bequeathed to McDonald and Crittenden.

In 1992, Endicott Trust Company merged into petitioner, Manufacturers and Traders Trust Company (hereinafter M&T), which took over as trustee of the trust. Anna Saxton died on March 12, 1993, thereby terminating her life interest in the trust. On November 4, 1993, M&T filed a petition for settlement of the account, along with its accounting, for the period of December 9, 1958 through March 12, 1993. Crittenden, McDonald and James Hayes, the executor of Anna Saxton's estate, filed objections thereto challenging, *inter alia*, the allocation of the trustee's annual commissions.

As to the allocation of commissions, the record reflects that while the trustee's annual commissions were charged one half to the principal and one half to the income of the trust from 1958 through 1985, commissions were charged entirely to income from 1985 through 1993. Crittenden objected to the 1958 through 1985 allocation of commissions contending that, like the later period, all amounts should have been charged to income alone as provided under the terms of decedent's will. The estate of Anna Saxton (hereinafter the estate) argued to the contrary, contending that the allocation of commissions from 1958 through 1985 appropriately followed the statutory

mandate of SCPA 2309 (former [3]) and that the change of allocation from 1985 through 1993 was improper.

By order entered November 16, 1994, Surrogate's Court found that prior to 1985, the trustee erred in its method of allocation since, under the terms of the will, decedent intended that such commissions be allocated to trust income only. Accordingly, the court directed a credit to Crittenden in the amount of $53,010.48, representing one half of the commissions charged to principal prior to 1985, along with $2,520.74 in expenses. It also directed M&T to pay, from its individual funds, a surcharge in the form of interest on the money owed to Crittenden. It further held that since M&T did not distribute to Anna Saxton income in the amount of $175,993.38, which was earned in the trust through the last quarter of 1992 before her death, immediate payment, with interest, should be made to her estate.

Crittenden moved for, *inter alia*, settlement of the November 16, 1994 order and M&T cross-moved for reconsideration. By order entered January 13, 1995, Surrogate's Court granted settlement and modified its prior decision and order by clarifying, upon Crittenden's request, the amount of interest to be paid by M&T. Although the court later granted reconsideration with respect to the imposition of the surcharge against M&T, by order entered March 9, 1995, it upheld the surcharge. M&T appeals from all orders which imposed a surcharge upon its individual funds and which directed payment of the accumulated income earned through the last quarter of 1992 to the estate. The estate challenges the determination by Surrogate's Court that the trustee had improperly allocated its commissions from 1958 through 1985.

Leaving aside all issues raised with respect to the orders of Surrogate's Court concerning discovery and inspection, we turn first to a review of the allocation of the trustee's annual commissions. From the inception of the trust through 1984, SCPA 2309 (former [3]) detailed the manner in which a trustee's annual commissions must be allocated. It provided that "[u]nless the will otherwise *explicitly* provides the annual commissions allowed * * * shall be payable one-half from the income of the trust and one-half from the principal of the trust" (emphasis supplied). In 1984, the Legislature enacted a new statutory scheme addressing, *inter alia*, the allocation of commissions to corporate trustees, like M&T (*see*, SCPA former 2312; *see also*, L 1984, ch 936). The only significant difference between these provisions, insofar as the allocation of commis-

sions is concerned, was the substitution of the term "expressly" for the former use of the term "explicitly" (*compare*, SCPA 2309 [former (3)], *with* SCPA 2312 [former (5)]).[1] The sole issue thus becomes whether decedent's will "explicitly" and/or "expressly" provided that some scheme, other than the statutory scheme, was to govern the allocation of the trustee's annual commissions. We think not.

By the terms of the will, the residue of the estate was bequeathed to Endicott Trust Company in trust "[t]o invest and re-invest the same and to collect the income thereof and after paying from such income all taxes, charges and expenses of this Trust, to pay over the net income remaining to my wife, ANNA E. SAXTON, during her lifetime". Finding, as urged by Crittenden, that the use of the language "all taxes, charges and expenses" was decedent's explicit and express declaration that the trustee's annual commissions, as an expense and/or charge to the trust, should be allocated entirely from income—a manner contrary to the statutory scheme—Surrogate's Court followed what it believed to be the intent of decedent (*see, Matter of Cord*, 58 NY2d 539, 544) and held that commissions were improperly allocated from 1958 through 1985.

Unlike other statutory provisions which permit a testator to circumvent the statutory method of payment when indicated "by necessary implication" (SCPA 1811 [2] [b]), the statute here mandates that there be a clear and unmistakable direction in a trust that the allocation of the trustee's annual commissions be paid in a manner different than that permitted by statute (*see generally, Matter of Shubert*, 10 NY2d 461; *Matter of McKinney*, 101 AD2d 477, *lv denied* 63 NY2d 607). Contrary to the reasoning employed by Surrogate's Court, the issue is not whether a trustee's annual commissions are expenses or charges of a trust, but rather whether decedent's will "expressly" and/or "explicitly" provided that the commissions should be payable from income only (*cf., Matter of Chadbourne*, 76 Misc 2d 1013, 1015).

Upon our review of terms here employed as they relate to allocation, we do not believe that decedent incorporated a clear and unmistakable direction in the trust that commissions be paid in a manner other than that permitted by the statutory scheme (*cf., Matter of Ginsburg*, 115 Misc 2d 122). Finding the

---

1. SCPA 2312 (former [5]) was amended in 1993 in that the fractional division between principal and income has been changed from one half payable from income and principal, respectively, to one third payable from income and two thirds payable from principal (*see*, L 1993, ch 640, § 3).

method of allocation between 1958 and 1985 entirely proper, we must reverse the imposition of the surcharge in the form of interest against M&T[2] since it was premised upon a finding that the method of allocation between 1958 and 1985 was improper. Concomitantly, in finding no clear and unmistakable direction that the commissions should be allocated in a manner contrary to the statutory scheme, we must conclude that the manner of allocation employed between 1985 and 1993 was improper, thus warranting a credit to the estate in the amount of $85,542.99, representing one half of the commissions taken.

Moreover, we find the memorandum dated August 12, 1959 from the attorney for decedent's estate to the coexecutors of decedent's estate, one of which was Anna Saxton, to be significant on the issue of a surcharge. It indicates that the trustee, after conferring with the attorney who drafted the will, found no reason not to apply the statutory allocation scheme. In light of this memorandum and the lack of evidence indicating why the trustee chose to change the method of allocation between 1985 and 1993, we must remit to Surrogate's Court the issue of whether there should be the imposition of a surcharge against M&T, in the form of interest.

■ As to the order of Surrogate's Court to M&T to immediately pay the estate all accumulated income earned through the last quarter of 1992, we find no error.[3] A trustee may properly withhold a reasonable amount of income at the end of each year to meet present or anticipated expenses, which may be chargeable to income (*see, Matter of Skrainka*, 93 Misc 2d 156; *see also, Matter of James*, 6 Misc 2d 849; *Matter of Ridge v Felt*, 184 Misc 11). Here, however, there is nothing to suggest that the income withheld by M&T was done to meet present or anticipated expenses. Moreover, there exists nothing to suggest that the expenses now incurred remotely relate to the time period in which this income was accumulated.

■ Addressing next the issues raised regarding the resolution by Surrogate's Court of discovery disputes, the record reflects that M&T served notices of discovery and inspection on

---

**2.** As to M&T's motion to strike a chart compiled by the estate in its brief, contending that it is dehors the record, we find that since the chart pertains to the issue of surcharge, which we found improperly imposed in light of our determination regarding allocation, we need not address the issue.

**3.** It appears that the income was withheld during a period of time when Anna Saxton was having difficulty managing her financial affairs and after it was discovered that she had in excess of $400,000 in her non-interest-bearing checking account.

both McDonald and Crittenden in July 1994 and August 1994. It demanded, *inter alia*, the production of all correspondence to or from Anna Saxton relating to the trust, as well as all correspondence and documents from the law firm of Hinman, Howard & Kattel (hereinafter HH&K) relating to the trust. M&T further requested all correspondence with Crittenden's son, who is an attorney, relating to the trust.

All requested documents were produced except for 13 documents, which were withheld on the basis of attorney-client privilege. In November 1994, M&T sought, *inter alia*, to compel Hayes and Eugene Peckham, partners in HH&K, to testify at an examination before trial (hereinafter EBT). Each refused to do so on the basis of the attorney-client privilege. On November 30, 1994, M&T moved to compel Crittenden and McDonald to produce the withheld documents and to direct Peckham and Hayes to appear and testify at an EBT.

By order entered March 9, 1995, Surrogate's Court determined that two of the disputed documents fell outside the parameters of the established discovery time line, that five of the disputed documents were, in fact, discoverable and that six other documents were privileged. The court further found that both Hayes and Peckham must submit to an EBT, but that each could assert the attorney-client privilege as necessary.

M&T also sought documents relating to the preparation of Anna Saxton's will and the administration of her estate. Counsel for McDonald and Crittenden successfully objected on relevancy grounds. On January 27, 1995, M&T moved to strike a letter from Hayes to Surrogate's Court which outlined HH&K's legal relationship with Anna Saxton, Crittenden and McDonald, and requested an evidentiary hearing concerning the attorney-client privilege. Surrogate's Court denied the request.

Reviewing the determination by Surrogate's Court to deny discovery of those documents falling outside the previously established time frame for document discovery, we find no error. Inasmuch as M&T never made an application to extend such period, we find no abuse of discretion (*see generally*, *Hirschfeld v Hirschfeld*, 69 NY2d 842).

As to those documents found to be protected by the attorney-client privilege, again we find no error. Both Crittenden and McDonald bore the burden of establishing the existence of the privilege and thus their right to its protection (*see*, *Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377). The record reflects that Crittenden's son, John Crittenden, averred

that he counseled Crittenden and McDonald, as well as the other members of his family who were then contingent remaindermen of the trust. He further averred that as to the documents at issue authored by him, each was prepared by him "for the purpose of and in the course of protecting my family's legal rights and obtaining legal advice for my family, and were provided to the recipients in confidence". His status as family counsel and his characterization of not only his but also his family's expectation of confidentiality in these communications were confirmed by affidavits of Crittenden and McDonald. Noting that the "critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client" (*supra*, at 379), we must conclude that Crittenden and McDonald met their burden in establishing the existence of a protected attorney-client relationship with John Crittenden.

As to the relationship with HH&K, Crittenden averred that she was represented by HH&K during the 1980's with respect to her family's interest in the trust. Crittenden averred that she felt it was appropriate to have New York counsel with respect to her family's interest in the trust and directed John Crittenden, as her attorney, to confer with HH&K. Similarly, McDonald averred that around 1987 she too conferred with HH&K regarding matters pertaining to the trust. Given our review of the record and the "[o]bvious tension [which] exists between the policy favoring full disclosure and the policy permitting parties to withhold relevant evidence" (*supra*, at 377), we find that Surrogate's Court properly exercised its discretion (*see generally, Hirschfeld v Hirschfeld, supra; see also, Rossi v Blue Cross & Blue Shield,* 73 NY2d 588). We further reject any contention that Crittenden and McDonald, by virtue of their objections, waived the attorney-client privilege (*see, Manufacturers & Traders Trust Co. v Servotronics, Inc.,* 132 AD2d 392; *cf., Jones v Gelles,* 167 AD2d 636, *lv denied* 77 NY2d 806; *People v Krawitz,* 151 AD2d 850, *lv denied* 74 NY2d 742). As to any claim that the privilege was waived on the document authored by Crittenden's husband, again we find no merit (*see, Matter of Pretino,* 150 Misc 2d 371, 373).

As to Surrogate's Court's refusal to compel the discovery of documents pertaining to the preparation of Anna Saxton's will and the administration of her estate, we find no abuse of discretion (*see generally, Hirschfeld v Hirschfeld, supra; Matter of Johnson,* 192 AD2d 859; *Matter of Quandt,* 175 AD2d 433). Despite the public nature of many of these documents, we find

that M&T failed to demonstrate that they are likely to lend support to its claims in the instant matter. Finally, we further find no basis to strike the letter from Hayes to Surrogate's Court concerning HH&K's legal representation of Crittenden and McDonald since it is clear that the letter was not the only evidence upon which the court based its decision (*cf.*, *Melnick v Melnick*, 85 AD2d 531).

MERCURE, J. P., CREW III and YESAWICH JR., JJ., concur.

Ordered that the orders entered November 16, 1994, January 13, 1995 and March 9, 1995 are modified, on the law, without costs, reversing so much thereof as directed credits to respondent Mary Rita Crittenden in the amounts of $53,010.48 and $2,520.74 and a surcharge to M&T; the estate of Anna Saxton is credited in the amount of $85,542.99, representing reimbursement of funds improperly deducted from income between 1985 and 1993, and matter remitted to the Surrogate's Court of Broome County for a determination with respect to interest and/or a surcharge; and, as so modified, affirmed.

Ordered that the orders entered March 9, 1995, March 9, 1995 and March 10, 1995 are affirmed, without costs.