Sara COMI and Richard Comi, Plaintiffs,

v.

DSC FINANCE CORPORATION,
Defendant.

No. 96–CV–1425 (FJS).

United States District Court,
N.D. New York.

Feb. 11, 1998.

Mentor, Rudin, & Trivilpiece, PC, Syracuse, NY (Mitchell J. Katz, Chaim J. Jaffe, of counsel), for Plaintiffs.

McNamee, Lochner, Titus & Williams, PC, Albany, NY (Michael J. Hall, of counsel), Baker & McKenzie, Dallas, TX (Mark E. McDonald, Camille R. McLeod, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is a diversity action brought by the Plaintiffs, Sarah and Richard Comi, seeking declaratory relief which would terminate their obligation under the terms of their guaranty contract with the Defendant, DSC Finance Corporation ("DSC"). The Defendant has counterclaimed for a declaratory judgment ordering the Plaintiffs liable for the $177,686.80 still owed under the aforementioned guaranty agreement. Presently before the Court are the parties' cross-motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court held oral argument on these motions on July 1, 1997. For the reasons stated on the record that day, the Court denied the Plaintiff's summary judgment motion and reserved on the Defendant's summary judgment motion. The issues presently before the Court are (1) whether there is a material issue of fact as to the amount due and owing by the Plaintiffs to the Defendants under the terms and conditions of the guaranty agreement, and if not (2) what reasonable attorney's fees is the Defendant entitled to recover.

### Brief Factual Background

On September 1, 1994, DSC entered into an equipment lease with Glens Falls Communications Corporation ("GFCC") obligating GFCC to pay $613,600 plus interest at 18% per annum for the lease of a DEX 600S switching system. The Plaintiffs, Richard and Sarah Comi, personally guaranteed this debt by a guaranty agreement executed on September 29, 1994. Shortly thereafter, GFCC entered bankruptcy. At the time of filing, the Plaintiffs possessed unsecured claims against GFCC totaling $137,201.74. However, by operation of the guaranty agreement, those claims were transferred to DSC by the Bankruptcy Court on February 2, 1996, to satisfy the Plaintiffs' existing obli-

gation to DSC under the guaranty agreement.

GFCC's Chapter 11 plan was confirmed on February 16, 1995. One section of the approved plan authorized transfer of title of the DEX 600S switching system to a third party, NEC Business Communication Systems (East) Inc. ("NECBCS"), in return for a lump sum payment of $507,416. Also according to the approved plan, that lump sum payment was paid directly to DSC, fully extinguishing DSC claims against GFCC. However, the plan expressly excluded any claims owing to DSC by the Plaintiffs under the guaranty. (*See* Bulko Aff. Ex. D. at 5.) The approved plan also provided for a 100% payout for general unsecured creditors.

The present dispute centers on the $137,-201.74 worth of general unsecured claims, previously owing to the Plaintiffs by GFCC, but presently possessed by DSC. The Plaintiffs claim that by order of the Bankruptcy Court, the underlying debt of GFCC has been extinguished, and thus they have no existing guaranty liability and ought to be able to recover their unsecured claims against GFCC. DSC claims that it is still owed $56,781.94[1] on the original debt of $613,600, along with interest and $127,889.91 in costs and attorney's fees. DSC claims that the Plaintiffs are still liable for these amounts under the terms of the guaranty agreement, and the unsecured claims transferred to DSC will only partially satisfy this obligation.

### Discussion

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). To survive a

motion for summary judgment the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant must offer evidence that demonstrates that there are issues of fact that must be decided by a fact finder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

The interpretation of the terms and conditions of the guaranty agreement is central to resolving this dispute. The parties disagree as to which state law should govern the contract interpretation. The guaranty itself specifies that:

> This guaranty is ... a contract entered into under and pursuant to the laws of the State of Texas and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state....

It is well established that, in diversity cases, a federal court must look to the law of the forum state to resolve conflict of law questions. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Generally, when parties agree to a choice-of-law provision in a contract, New York law will honor that choice. *See Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir.1987). Where, as here, the parties dispute whether the action is governed by the choice-of-law provision, the court must look to the language of the provision itself to determine whether it is "sufficiently broad" to encompass the controversy at hand. *See Turtur v. Rothschild Registry Intern., Inc.*, 26 F.3d 304, 309–10 (2d Cir. 1994).

This particular dispute centers, in large part, on whether the Plaintiffs' obligations under the aforementioned guaranty agreement were extinguished when GFCC reached a settlement with the Defendant for

---

**1.** The Court determined at oral argument that the Defendant's original estimate of the amount of principal at $61,211 was erroneous due to a calculation error. In Lieshen Bibby's affidavit, DSC listed the lump sum payment by NECBCS as $502,986.00, when if fact the full payment of $507,416.00 was made to the Defendant. Thus, the Court has subtracted the difference from the principal.

the underlying debt. This issue hinges on the interpretation and enforcement of several provisions of the guaranty, specifically paragraphs four and twenty. Since a resolution of this issue necessarily depends on an interpretation and construction of the guaranty agreement, the controversy properly falls within the scope of the choice-of-law provision set forth above. Thus, based on New York conflict of law principles, Texas law governs this dispute.

## I. THE EXTENT OF THE PLAINTIFFS' LIABILITY UNDER THE GUARANTY

The Defendant claims that it is owed $56,-781.94 in principal remaining from their original lease contract with GFCC. Even though the obligations of GFCC were extinguished by virtue of the approved Chapter 11 plan, the Defendant argues that the Plaintiffs as guarantors of GFCC's debt are still liable for the remainder of the obligation. Defendant argues that by the express terms of paragraph four and twenty of the guaranty, the Plaintiffs waived any right to assert the defense of payment or release by GFCC for the underlying obligation, and contracted to remain liable for the entire amount of the debt. Paragraph four states, in relevant part, that the Plaintiffs would remain bound under the Guaranty, "notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit, or other dealing" to GFCC of the underlying debt. Paragraph twenty further sets forth that the Plaintiffs waive "any defenses which the lessee may assert on the underlying debt, including but not limited to, failure of consideration, breach of warranty, payment, statute of frauds, statute of limitations, accord, and satisfaction and usury." Defendant argues that the law of guaranty contracts allows a guarantor to remain liable for and underlying debt despite any payment by the debtor. *See, e.g., In Re El Paso Refining, Inc.,* 192 B.R. 144 (Bankr. W.D.Tex.1996); *Crompton–Richmond Co. v. Briggs,* 560 F.2d 1195, 1197 (5th Cir.1977); *NCNB Texas Nat'l Bank v. Johnson,* 11 F.3d 1260 (5th Cir.1994).

Primarily, the Plaintiffs argue that any obligation they had to the Defendant by virtue of their personal guaranty ·of GFCC's debt to the Defendant was extinguished when GFCC's obligation to the Defendant was settled pursuant to the bankruptcy plan. The Plaintiffs argue that because a guarantor's liability cannot exist absent the primary obligee remaining liable on the underlying debt, the Plaintiff should be released from liability by operation of the Bankruptcy Plan. *See Asociacion De Azucareros· De Guatemala v. U.S. National Bank of Oregon,* 423 F.2d 638, 641 (6th Cir.1970); *Michaels v. Chemical Bank,* 110 Misc.2d 74, 76, 441 N.Y.S.2d 638 (Sup.Ct.1981). Plaintiffs further argue that the Court should not interpret paragraphs four and twenty of the guaranty as a waiver by the Plaintiffs of the above-mentioned defense because such an interpretation would be patently inequitable and could potentially subject the Plaintiffs to double liability on the underlying debt. Alternatively, Plaintiffs argue that there is a material issue of fact as to whether the sale of the DEX 600S switching system was "commercially reasonable" given the Defendant's status as an over-secured creditor and given the fact that the sale failed to satisfy GFCC's entire obligation.

■ There is a general rule that the release of a primary obligor releases the guarantor. *See Holcombe v. Solinger & Sons Co.,* 238 F.2d 495, 499 (5th Cir.1956). However, where a guaranty specifically authorizes the release of an obligor without impairing the ability to seek payment from the guarantor, the guarantor's liability exists independently of the underlying obligation. *See In re El Paso,* 192 B.R. at 148; *NCNB Texas Nat'l Bank,* 11 F.3d at 1266 (holding that the court will enforce a guaranty according to its terms). The authority cited by the Plaintiffs in their papers does not disagree with this principle. *See Bier Pension Plan Trust v. Schneierson,* 74 N.Y.2d 312, 315, 546· N.Y.S.2d 824, 545 N.E.2d 1212 (1989) (holding that a surety is not liable on any obligation which is modified *without its consent* ); *Jones v. Gelles,* 167 A.D.2d 636, 638, 562 N.Y.S.2d 992 (3d Dep't 1990) (holding that a guarantor may still be liable on a guaranty even if the creditor cannot recover from the principal, if the surety expressly

assumed a liability independent of the principal's obligation).

■ Here, by the express terms of paragraphs four and twenty of the guaranty, the Plaintiffs have waived the right to assert any defense based on the release of GFCC by the bankruptcy court. Further, pursuant to paragraph four, the Plaintiffs expressly guaranteed the full debt, independent of any obligation owed by GFCC. Additionally, the Plaintiffs' equitable argument is not persuasive because DSC is not attempting to recover any amount over what it was entitled to in the original agreement. Furthermore, the order of the Bankruptcy Court sets forth:

> All claims of DSC existing as of the Effective Date, including secured claims, unsecured deficiency claims and administrative claims, *but specifically not including any claims that DSC may own by virtue of an assignment from Richard Comi by virtue of a certain guaranty, dated September 24, 1994,* shall be paid in full, as to [GFCC], without waiver by DSC of its rights, if any, to pursue Comi on his guaranty or enforce any claim which Comi may have assigned to DSC, by payment in cash, on or before the Effective Date, by NECBES of the sum of $507, 416.

(emphasis added). Thus, this order by its express terms contemplates that DSC would have full right to pursue the remainder of GFCC's original debt from the Plaintiffs.

■ Finally, Plaintiffs' challenge of the commercial reasonableness of the sale of the DEX 600S switching system merits little discussion. Section 9.507 of the Texas Business and Commerce Code sets forth, in relevant part:

> A disposition which has been approved in any judicial proceeding or by any bona fide creditor's committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any

disposition not so approved is not commercially reasonable.

Tex. Bus. & Com.Code § 9.507. The sale of the DEX 600S switching system was approved as part of the confirmed Chapter 11 bankruptcy plan of GFCC signed by the Honorable Bankruptcy Judge Robert Littlefield. The Plaintiffs as creditors of GFCC were parties to the confirmation process and had the opportunity to object to the commercial reasonableness of the sale during confirmation and on appeal. Even if the Court were inclined to let the Plaintiffs relitigate this issue, the Defendant is still entitled to the conclusive presumption of commercial reasonableness under § 9.507. Plaintiffs have pointed to only their perception that the sale price was inadequate as evidence that the sale was not commercially reasonable. This alone is not enough to create an issue of fact, even without the conclusive presumption afforded by § 9.507. *See Federal Deposit Ins. Corp. v. Lanier,* 926 F.2d 462, 467 (5th Cir. 1991) ("the fact that a better price could have been obtained by a sale ... is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner") (citing Tex. Bus. & Com.Code § 9.507(b)). Thus, there is no material issue of fact remaining as to the Plaintiffs' liability to DSC for the remaining principal from GFCC's original obligation. Accordingly, the Court grants the Defendant's motion for summary judgment as to the $56,781 .94 of principal plus 18% interest per annum.

## II. ATTORNEY'S FEES AND COSTS

The Defendant claims that it is entitled to recover $114,420 in attorney's fees and $12,032.37 in costs under the terms of the guaranty agreement.[2] Paragraph two of the guaranty sets forth:

> The undersigned [Sarah and Richard Comi] agrees to reimburse DSC, to the extent that such reimbursement is not made by GFCC, for all expenses, including, without limitation, attorney's fees incurred by DSC in connection with the enforcement of any provision of the Lease or of this Guaranty if this Guaranty or the

---

**2.** Additionally, Defendant's local counsel McNamee, Lochner, Titus & Williams, P.C. requests

fees and costs amounting to $1437.54.

Lease is placed in the hands of an attorney.

The Plaintiffs object to the amount of fees requested on several grounds including: (1) excessive time spent on the tasks performed, (2) overly vague descriptions of the tasks performed, (3) double billing on the duplication of tasks, (4) charging for unrecoverable tasks such as researching the local rules, (5) charging the full hourly rate for travel time, (6) bunching of time entries, (7) charging the full hourly rate for administrative tasks, (8) charging for travel expenses, and (9) inconsistencies with time entries.

A federal court hearing a diversity case must apply the law of the forum state in determining the eligibility of a party for attorney's fees. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987). Since New York honors the choice-of-law agreements of contracting parties, *see Woodling,* 813 F.2d at 551, Texas law governs the present attorney's fees dispute. Generally, attorney's fees are not recoverable under Texas law unless specifically provided for by statute or by contract between the parties. *See New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex.1967). Based on the Court's decision set forth above, the Plaintiffs are liable for the remaining principal owed to the Defendant under the original lease agreement; thus, pursuant to paragraph two of the guaranty agreement, they are liable to the Defendant for expenses and attorney's fees incurred in connection with the enforcement of the lease and guaranty agreement.

■ The attorney fee inquiry is not ended, however, because in order to be recoverable, a fee request must be reasonable under the particular circumstances of the case and must bear some reasonable relation to the amount in controversy. *See Resolution*

*Trust Corp. v. Tassos,* 764 F.Supp. 442 (S.D.Tex.1990) (citing *Jerry Parks Equip. Co. v. Southeast Equip. Co., Inc.,* 817 F.2d 340, 344 (5th Cir.1987)). The Court must consider several factors in determining the reasonableness of the fee request, including the amount involved, the actual services performed, and the customary and usual charges for the locality in which the court sits. *See Resolution Trust,* 764 F.Supp. at 444; *Brazos County Water Control and Improvement Dist. No. 1 v. Salvaggio,* 698 S.W.2d 173, 178 (Tex.App.1985, no writ). Accordingly, the Court will assess the reasonableness of the Defendant's fee request based on the case law setting forth the customary and usual charges recoverable in the Northern District of New York.[3]

■ The Court first notes that the Defendant is seeking $350/hour for the services of attorney Mark E. McDonald, $370/hour for attorney Joseph Samet, $180–$210/hour for attorney Camille McCleod, $275/hour for attorney Brent Friedman, and $300/hour for attorney Robert Lewis. The prevailing market rates for attorney services in the Northern District of New York are $150/hour for the legal services of a partner and $100/hour for the legal services of an associate. *See Tanzini v. Marine Midland Bank, N.A.,* 978 F.Supp. 70, 82 (N.D.N.Y.1997); *Blissett v. Casey,* 969 F.Supp. 118, 131 (N.D.N.Y.1997). Accordingly, the Defendant's fee request is reduced by the difference in the hourly rates requested and those customary and usual in this district. Therefore, the Court finds that the Defendant's fee request must be reduced by $38, 976.50.

■ The Court further notes that the Defendant has charged the full hourly rate for its approximately[4] 72 hours of travel time. In this district, absent a showing that legal services were rendered en route, attorneys

---

3. The Court notes that Texas law requires the issue of reasonableness of attorney's fees to be decided by the finder of the fact should a material issue of fact arise. *See Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 148–49 (Tex.App.1986, no writ); *Engel v. Pettit,* 713 S.W.2d 770, 773 (Tex.App.1986, no writ); *Gifford v. Old Republic Ins. Co.,* 613 S.W.2d 43, 46 (Tex.Civ.App.1981, no writ). However, even though this Court sits in diversity, it decides the

issues of reasonableness and amount of attorney's fees as a question of law. *See McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1313–14 (2d Cir.1993).

4. The Court has had to approximate the travel time because the Defendant has bunched it together with other contemporaneous legal tasks.

are not entitled to recover attorney's fees at their full hourly rate during travel. *See Blissett*, 969 F.Supp. at 134. Thus, Defendant's requested fees must be reduced by $6,120 based on a travel rate of $65.00/hour (72 hours × difference between $150 and $65). *See id.*

■ The Court further notes that the Defendant has charged the full hourly rate for administrative tasks such as mailing and faxing letters. Such tasks are only reasonably taxed at $50.00/hour. *See id.* Thus based on the 5.9 hours of such tasks charged, the Court finds that the Defendant's fee award should be further reduced by $590 (5.9 hour × difference between $150 and $50).

The Court further finds that many of the Defendant's billing entries are impermissibly vague and inexact. *See Resolution Trust*, 764 F.Supp. at 444; *Blissett*, 969 F.Supp. at 133. For example one entry by attorney McLeod reads:

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 10/23/95 | MCLEOD | Review plan and disclosure statement; telephone call to Lisa Tang; fax pages to Tim Montgomery; phone call to Tim Montgomery; call to Court; call to Rbert [sic] Rock; fax in from Rob Rock. | 6.20 |

The Defendant's affidavit is replete with charges like the one above which require the Court to speculate as to whether the work is relevant to the litigation, and whether a particular task took an unreasonably long period of time to complete. *See Resolution Trust*, 764 F.Supp. at 444. Therefore, in exercise of its discretion, this Court further reduces the Defendant's fee request by ten percent.

Therefore, the Court finds that the Defendant is entitled to a total fee award of $61,-860.15 which reflects the following adjustments:

5. Additionally, the Court finds the $1437.54 requested by Defendant's local counsel reasonable

| | |
|---|---|
| *Amount of Fees Originally Requested* | $114,420.00 |
| *Minus Hourly Rate Adjustment* | - $ 38,976.50 |
| *Minus Travel Time Adjustment* | - $  6,120.00 |
| *Minus Administrative Adjustment* | - $    590.00 |
| | $ 68,733.50 |
| *Minus 10% Adjustment* | - $  6,873.35 |
| *TOTAL FEE AWARD* | $ 61,860.15 [5] |

As to the costs requested by the Defendant, the Plaintiffs object to a claimed travel expense for $1,331.67 in the May 1996 billing record where the record reflects there was no travel during May of that year. The Court finds that billing records reflect a staggered billing for travel expenses sometimes several months after the travel occurred. As there are five different travel periods reflected in the billing records and only five requests for travel expenses, the Court finds the Defendant's request to be reasonable as to this issue. The Court further finds the rest of the Defendant's requested costs and disbursements to be reasonable. Accordingly, the Court finds that the Defendant is entitled to recover $12, 032.37 in costs.

Therefore, the Court finds that the Plaintiffs are liable to the Defendant for a total of $75,330.06 in attorney's fees and costs.

### Conclusion

After carefully considering the parties' submissions, the parties' arguments at oral argument, the entire record, and the applicable law, it is hereby

ORDERED that the Plaintiffs' motion for summary judgment is DENIED for the reasons stated on the record on July 1, 1997. It is further

ORDERED that the Defendant's cross-motion for summary judgment is GRANTED, as modified herein, and Defendant's

under the circumstances.

cross-motion for attorney's fees is GRANTED as modified herein.

**IT IS SO ORDERED.**