■ Lo-Ho LLC, c/o Estate of WILLIAM GOTTLIEB, Deceased, by MOLLY BENDER, as Executrix, Appellant, v SANTIAGO BATISTA, Defendant, and JOSE DELEON, Respondent. [881 NYS2d 33]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered January 10, 2008, which, in an action arising out of a breach of a commercial lease, after a nonjury trial, dismissed plaintiff landlord's cause of action against defendant-respondent guarantor, unanimously affirmed, with costs.

In this action to recover on a personal guaranty, plaintiff Lo-Ho LLC, and defendant Santiago Batista* entered into a commercial lease agreement (April 2000 lease), for a five-year term. The monthly rent started at $1,950 for the first year, with the last year's rent at $2,714 per month. In addition, Batista agreed to pay 35% of the real estate taxes as rent. On April 3, 2000, defendant Jose DeLeon (defendant), Batista's cousin, signed a personal guaranty for Batista's obligations under the April 2000 lease.

The relevant provision of the guaranty is as follows: "The undersigned Guarantor guarantees to Owner . . . the full performance and observance of all the agreements to be performed and observed by Tenant *in the attached Lease* . . . without requiring any notice to the Guarantor of nonpayment, or non-performance, or proof, or notice of demand to hold the [Guarantor] responsible under this guaranty, all of which the [Guarantor] hereby expressly waives and expressly agrees . . . *The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease.*" (Emphasis added.)

The lease expired on March 31, 2005. On or about April 25, 2005, plaintiff and Batista entered into a subsequent lease agreement, effective as of April 1, 2005, designated as an

---

* Batista defaulted in the instant action and is not a party to this appeal.

"Extension of Lease" (April 2005 lease). The April 2005 lease purported to extend the terms of the April 2000 lease for an additional five-year term, until March 31, 2010, "on the same terms and conditions" except with respect to the rent which effectively increased approximately $200 annually from $2,500 beginning April 1, 2005 to $3,400 beginning April 1, 2009. It also required the tenant to pay the real estate taxes in equal installments on a monthly basis. Further, the new lease provided that the tenant would have August 2005 rent-free on condition that he undertook substantial renovations including new marble flooring for the store, new glass display and painting, and installation of 15 feet of marble kitchen counter.

Batista defaulted under the terms of the April 2005 lease and plaintiff brought a nonpayment proceeding against him. Plaintiff was awarded $24,995.91 in rent arrears and real estate taxes. In May 2006, plaintiff commenced this action against Batista for breach of the April 2005 lease, and against defendant Jose DeLeon to enforce the guaranty for rent through March 31, 2010. Following joinder of issue, plaintiff moved for summary judgment. In opposition, respondent argued that he was not responsible for the rent arrears or real estate taxes due after March 31, 2005, when the April 2000 lease expired, along with his guaranty. The court denied plaintiff's motion on the grounds that there were triable issues of fact as to whether the April 2005 lease was a new lease or merely an extension of the April 2000 lease. A bench trial was held in November 2007.

The court dismissed the action, finding that what was denominated as an extension was in reality a new lease and that the guaranty did not carry over to the April 2005 lease. Rather, the court found that the "amounts of money in the new lease," including the real estate taxes, were different; and there were too many changes made to the agreement to consider it a modification or an extension.

On appeal, plaintiff argues that the court erred by concluding that the guaranty did not apply to the April 2005 lease. Plaintiff contends that the terms of the guaranty were broad enough to encompass the extended lease. For the reasons set forth below, we disagree, and affirm Supreme Court.

It is well established that "[a] guaranty is to be interpreted in the strictest manner" (*White Rose Food v Saleh*, 99 NY2d 589, 591 [2003]), particularly in favor of a private guarantor (*see 665-75 Eleventh Ave. Realty Corp. v Schlanger*, 265 AD2d 270, 271 [1999]), and cannot be altered without the guarantor's consent (*see White Rose Food v Saleh*, 99 NY2d at 591). In this regard, a "guarantor should not be bound beyond the express

terms of his guarantee" (*665-75 Eleventh Ave. Realty Corp.*, 265 AD2d at 271 [internal quotation marks and citation omitted]).

In this case, the guaranty expressly stated that the defendant was guaranteeing "the full performance and observance of all the agreements to be performed and observed by Tenant *in the attached Lease*" (emphasis added). It is undisputed that the phrase "attached lease" refers to the lease signed in April 2000.

The guaranty further stated that it would *"remain and continue in full force and effect as to any renewal, change or extension of the Lease."* (Emphasis added.) Hence, as the trial court correctly found, the sole question is whether the lease of April 2005 qualifies as an "extension" of the lease under the terms of the guaranty.

Interpreting the guaranty in the strictest manner, we agree with the trial court that the lease signed in April 2005 was not an extension of the lease as would permit plaintiff to recover from defendant guarantor. First, there was no option to renew or extend included in the April 2000 lease. Thus, the lease effectively expired on March 31, 2005. Plaintiff's argument that because the tenant remained in possession during the negotiations "there is implied a continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original instrument" (*City of New York v Pennsylvania R.R. Co.*, 37 NY2d 298, 300 [1975]) is erroneous. In fact, the rider to the lease explicitly provides that such a rule would not apply. The holdover provision in the April 2000 lease states that if defendant Batista remained in possession of the premises after the expiration of the lease, "such holding over shall not be deemed to extend the term or renew the Lease, but such holding over thereafter shall continue upon the terms and conditions herein set forth," which included an increase in the rent. Finally, even if plaintiff's position is correct, a mere holdover tenancy could not operate in and of itself, to extend a personal guarantee in the absence of such provision in the guaranty.

In any event, the second lease states unequivocally, "Lease dated April 1, 2000 . . . expired on March 31, 2005." Regardless of the contract stating in the next paragraph, "[s]aid lease is further extended," plaintiff cannot have it both ways. An expired lease cannot be extended.

More significantly for defendant guarantor in this case, the lease of April 2005 could not be the type of extension of lease contemplated in the guaranty because it did not extend the terms and conditions of the April 2000 lease. The April 2005 lease contained new terms and conditions including an incre-

mentally higher rent. The increased rent would have substantially and impermissibly changed the guarantor's obligations under the original agreement (*see Dime Sav. Bank of N.Y. v Montague St. Realty Assoc.*, 90 NY2d 539, 542-543 [1997]) and thus, impermissibly increased defendant's risk without his consent (*see White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 [2008]). Hence, the second lease did not obligate the guarantor (*see Elite Gold, Inc. v TT Jewelry Outlet Corp.*, 31 AD3d 338, 340 [2006] [where a guaranty obligates a guarantor as to any "renewal, change or extension of the Lease," upon the expiration of the lease, the guaranty lapses and can no longer bind defendant]).

Although plaintiff attempts to distinguish this case from well established precedent, it correctly concedes in its brief: "True, the usual rule is that the guarant[y] lapses at the end of a lease term, or where a change is made that increases the guarantor's risk." There is no legal support or authority for making an exception to the "usual rule" in this case. Concur—Andrias, J.P., Nardelli, Catterson, Acosta and DeGrasse, JJ.