OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
Plaintiff Atlantic Properties LLC has sued defendant Judith DiFiore to recover the expenses associated with alleged damage to an apartment formerly rented by Andrew DiFiore, defendant’s son. Plaintiff contends that defendant, who was not a tenant in the apartment, is nevertheless financially responsible for her son’s alleged damage because she signed the original lease as a guarantor. Defendant denies financial liability for any money damages that her son may owe to plaintiff.
Plaintiff has moved for summary judgment against defendant. Defendant has failed to respond to plaintiff’s motion. Regardless of defendant’s failure to respond, plaintiff is entitled to summary judgment against defendant only if the factual allegations demonstrate its entitlement to a judgment as a matter of law. (See Liberty Taxi Mgt., Inc. v Gincherman, 32 AD3d 276, 277 n [1st Dept 2006]; Cugini v System Lbr. Co., 111 AD2d 114, 115 [1st Dept 1985], appeal dismissed 65 NY2d 1053 [1985] [“A movant’s failure to sufficiently demonstrate its right to summary judgment requires a denial of the motion regardless of the sufficiency, or lack thereof, of the opposing papers”].)
*915 Factual Background
On June 27, 2003, Andrew DiFiore signed a lease agreement to rent an apartment at 604 Farmstead Court in Churchville, New York owned by plaintiff Atlantic Properties LLC (Atlantic). Under the lease, Mr. DiFiore’s monthly rent was $755. The June 27, 2003 lease agreement expired on September 30, 2004.
At her son’s request, defendant Judith DiFiore signed the June 27, 2003 lease as a guarantor. The “Guaranty of Payment” provisions that Ms. DiFiore signed included the following:
“2. GUARANTY
“The following is my Guaranty:
“I guaranty the full performance of the Lease by the Tenant. This Guarantee is absolute and without any conditions. It includes, but is not limited to, the payment of rent, added rent and other damages or charges under the lease.
“3. CHANGES IN LEASE HAVE NO EFFECT
“This guaranty will not be affected by any change in the Lease whatsoever. This includes, but is not limited to, any extension of time or renewals for which I remain fully responsible for Tenant’s payment and performance until Tenant has vacated the Apartment and Landlord has collected all sums due upon the Lease.
“4. WAIVER OF NOTICE
“I do not have to be informed about default by Tenant. I waive notice of nonpayment or other default.”
On July 24, 2004, Atlantic’s agent and Andrew DiFiore signed a document labeled “Lease Renewal Addendum” that renewed Mr. DiFiore’s lease through September 30, 2006. The new monthly rent was $735. In early fall 2006, Atlantic and Andrew DiFiore apparently signed another document renewing their lease arrangement for a term beginning October 1, 2006 and ending December 31, 2007. It is unclear what the monthly rent was during that term.[1]
On October 29, 2007, Atlantic’s agent and Andrew DiFiore signed a document that renewed Mr. DiFiore’s lease from January 2, 2008 through January 31, 2009 at a monthly rent of $780. Unlike the June 27, 2003 lease or the two earlier renewal documents, the October 29, 2007 lease renewal document provided that the monthly rent included cable television. Another provi *916 sion in the October 29, 2007 lease renewal document that was not included in any of the earlier lease documents stated, “Tenant will pay for water and sewer (you will be billed directly from Waterwatch).” On October 29, 2007, Atlantic’s agent and Mr. DiFiore also signed a lease agreement rider providing for a “1st Month Free Rent Offer” with respect to Mr. DiFiore’s new lease.
On November 17, 2008, Atlantic’s agent signed another lease renewal document that renewed Mr. DiFiore’s lease from February 1, 2009 through January 31, 2010. The provisions of this document, including the $780 monthly rent, were identical to the provisions in the October 29, 2007 document.
The only document that defendant Judith DiFiore signed as guarantor was Andrew DiFiore’s June 27, 2003 lease agreement. Ms. DiFiore did not sign or otherwise guarantee the October 27, 2004 document, the fall 2006 document, the October 29, 2007 document, or the November 17, 2008 document.
On August 5, 2009, Atlantic brought a nonpayment eviction action against Andrew DiFiore in Chili Town Court. On August 20, 2009, that court granted Atlantic’s request for a warrant of eviction, and awarded a judgment for Atlantic against Mr. DiFiore in the amount of $3,073.13. Mr. DiFiore had fully paid that judgment as of January 19, 2011.
Two years later, on February 4, 2013, Atlantic sued Judith DiFiore in the amount of $1,561.86 for damage associated with Andrew DiFiore’s apartment rental that allegedly arose after Mr. DiFiore was evicted in August 2009. Atlantic did not sue Andrew DiFiore for this alleged damage. On February 14, 2013, Judith DiFiore filed an answer to Atlantic’s complaint denying responsibility for her son’s alleged damage. Atlantic now seeks summary judgment against Judith DiFiore as guarantor of Andrew DiFiore’s prior leases.
Discussion
Defendant’s Liability as Guarantor
It is well established that a guaranty of another person’s compliance with his or her contractual obligations “is to be interpreted in the strictest manner.” (White Rose Food v Saleh, 99 NY2d 589, 591 [2003].) Where, as here, the guarantor is a private party rather than a commercial actor, the application of this rule in the guarantor’s favor is particularly compelled. (See Lo-Ho LLC v Batista, 62 AD3d 558, 559 [1st Dept 2009]; 665-75 Eleventh Ave. Realty Corp. v Schlanger, 265 AD2d 270, 271 [1st Dept 1999].) Applying this principle, the New York Court of Ap *917 peals has emphasized that “[a] guarantor’s obligation cannot be altered without its consent; if the original note is modified without its consent, a guarantor is relieved of its obligation.” (White Rose Food v Saleh, 99 NY2d at 591; see Bier Pension Plan Trust v Estate of Schneierson, 74 NY2d 312, 315 [1989].)
In this action, there is no dispute that after they entered into the original lease on June 27, 2003, Andrew DiFiore and plaintiff modified the terms of Mr. DiFiore’s lease on four occasions: (1) July 24, 2004 (new two-year term and reduced monthly rent); (2) fall of 2006 (new 15-month term and unknown monthly rent); (3) October 29, 2007 (new 13-month term, increased monthly rent with cable included, and new obligations for water and sewer fees); and (4) November 17, 2008 (new one-year term). There is also no dispute that defendant Judith DiFiore did not expressly consent to any of these modifications.[2] Under these circumstances, Ms. DiFiore “is relieved of [her] obligation” as a private guarantor of the June 27, 2003 lease. (White Rose Food v Saleh, 99 NY2d at 591; see Lo-Ho LLC v Batista, 62 AD3d at 558, 560-561 [where terms of renewed lease, including monthly rent, differed from those in the original lease, guarantor’s obligations ceased despite a provision that “th(e) guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease” (emphasis omitted)]; see also 404 Park Partners, L.P. v Lerner, 75 AD3d 481, 482 [1st Dept 2010] [where defendant guaranteed original lease but did not expressly guarantee subsequent lease extension with a provision for increased rent, plaintiff not entitled to summary judgment against defendant].)
Plaintiff nonetheless asserts that when defendant signed her June 27, 2003 guaranty, she consented to all subsequent lease renewals, including those that modified the lease provisions. Plaintiff relies on the language in defendant’s June 27, 2003 guaranty that states that her guaranty “will not be affected by any change in the lease whatsoever, [i]nclud[ing], but . . . not limited to, any extension of time or renewals.” This argument is without merit in two respects.
First, while the guaranty language signed by defendant refers to lease extensions or renewals, neither the June 27, 2003 lease agreement nor any subsequent renewal document contains any explicit option to renew clause. Absent such a provision, and *918 particularly in light of the judicial mandate to construe a private party’s guaranty strictly in the guarantor’s favor, it is reasonable to construe the lease agreement as having expired on its specific ending date of September 30, 2004. (See Lo-Ho LLC v Batista, 62 AD3d at 560 [where lease did not include option to renew clause, the “Extension of Lease” document was a new lease, notwithstanding guaranty that “continue(d) in full force and effect as to any renewal, change or extension of the Lease” (emphasis omitted)].)
Second, even if defendant’s June 27, 2003 guaranty were construed as her consent to an unlimited number of future lease modifications regardless of their contents, the guaranty does not include a waiver of her right to notice of subsequent modifications to the lease. Absent his or her specific waiver of such notice, a guarantor has a right to be notified when modifications are made to the contract that he or she previously guaranteed. (See White Rose Food v Saleh, 99 NY2d at 591; Boulevard Mall v Knight, 300 AD2d 1017, 1018 [4th Dept 2002].)
Moreover, a guarantor’s waiver of express consent for future lease modifications is not equivalent to a guarantor’s waiver of notice of future lease modifications. To the contrary, a guarantor’s waivable right to provide express consent to future contract modifications is distinct from a guarantor’s waivable right to notice of subsequent contract modifications. (See White Rose Food v Saleh, 99 NY2d at 591 [guarantor does not give consent to a modification agreement merely because the guaranty waives the guarantor’s right to notice of a modification].)
A private guarantor’s right to such notice is particularly critical when his or her contractual obligations are construed to have no foreseeable end date. When contract provisions, such as those in the lease agreement in this action, extend into an indefinite future, a guarantor has a right to withdraw his or her guaranty when the contract is renewed or modified even where the guarantor consents to guarantee a renewed or modified lease. (See Levine v Segal, 174 Misc 2d 998, 999-1000 [App Term, 1st Dept 1997], affd 256 AD2d 199 [1st Dept 1998] [the terms of a guaranty that apply to renewed or modified leases “should be read as allowing unilateral revocation by (the) guarantor at the end of a given renewal period so as to avoid a construction where (the guarantor’s) liability continues for an unlimited and unspecified duration”]; see also Delaware Funds v Zuckerman-Honickman, Inc., 43 AD2d 889 [4th Dept 1974].) *919 Without notice that the parties to the original lease intend to renew the lease with modifications, a private guarantor is hardly in a position to assess whether to invoke his or her right to withdraw his or her guaranty.
Plaintiffs motion fails to demonstrate that defendant was given notice of any of the four modified lease renewals that plaintiff and Andrew DiFiore signed subsequent to the June 27, 2003 lease agreement that defendant originally guaranteed. Under these circumstances, and construing the guaranty strictly in Ms. DiFiore’s favor, it cannot be concluded that, as a matter of law, defendant is legally liable for Andrew DiFiore’s financial obligations following the modifications to the June 27, 2003 lease agreement.
Failure to Join a Necessary Party
A court may consider, at any time and on its own initiative, whether there has been a failure to join a necessary party to an action. (See City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469 [1979]; Town of Amherst v Hilger, 106 AD3d 120, 129 [4th Dept 2013].) Pursuant to CPLR 1001 (a), a person “who might be inequitably affected by a judgment in the action” must be made a party to the action as a necessary party. The goal of New York’s joinder law is, inter alia, to “ ‘protect against multiple lawsuits and inconsistent judgments. ’ ” (Swezey v Merrill Lynch, Pierce, Fenner & Smith, Inc., 19 NY3d 543, 551 [2012] , quoting Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals, 5 NY3d 452, 458-459 [2005].) A plaintiffs failure to join a necessary party to an action may result in dismissal of plaintiffs claims against any named defendant. (See CPLR 1003.)
As discussed above, Mr. DiFiore was the plaintiffs tenant and the sole signatory of all the relevant lease documents in this action. Plaintiff, however, did not name him as a defendant in this action. As the person who allegedly caused the damage for which plaintiff seeks a judgment against defendant, Mr. DiFiore’s interests might be inequitably affected by any judgment in this action. Additionally, plaintiffs failure to name Mr. DiFiore as a defendant in this action may unnecessarily lead to inconsistent judgments. (See Olney v Areiter, 104 AD3d 1100 [2013] ; Allsafe Tech., Inc. v Benz, 74 AD3d 1759 [4th Dept 2010].) Accordingly, Andrew DiFiore is a necessary party to this action.
If Andrew DiFiore is subject to this court’s jurisdiction, plaintiff is directed to amend its complaint to add Andrew Di *920 Fiore as a defendant. (See CPLR 1001 [b]; Windy Ridge Farm v Assessor of Town of Shandaken, 11 NY3d 725, 727 [2008]; Petti v Town of Lexington, 92 AD3d 1111, 1115 [3d Dept 2012].) If Mr. DiFiore is not subject to this court’s jurisdiction, the court must determine whether plaintiff is allowed to proceed in the absence of all necessary parties, or whether the action should be dismissed. (See CPLR 1001 [b]; Olney v Areiter, 104 AD3d at 1100.)
Conclusion
For the reasons discussed above, plaintiffs motion for summary judgment against defendant Judith DiFiore is denied.

. Plaintiffs motion does not include a lease renewal document for this lease term.

. An extension of the lease term is considered a modification to an agreement. (See White Rose Food v Saleh, 99 NY2d at 591 [“There is no dispute that the extension of time (to repay a debt) was a modification”].)